**TRAVEL MASTERS, INC.
et al., Appellant,**

v.

**STAR TOURS, INC., Appellee/Appellant,**

v.

**Donna GOLDSMITH, Appellee.**

No. 05-90-00419-CV.

Court of Appeals of Texas,
Dallas.

Jan. 23, 1991.

Rehearing Denied Feb. 26, 1992.

Opinion Ordered Published by Texas
Supreme Court May 28, 1992.

Tom McCorkle, Dallas, for appellant.

Randy Roberts, Bradley S. Freedberg, Dallas, for appellee.

Before Justices ROWE, BAKER, and WHITTINGTON, JJ.

## OPINION

ROWE, Justice.

This appeal involves the enforceability of a covenant of noncompetition. Star Tours, Inc. (Star Tours) sued Travel Masters, Inc. (Travel Masters), Walter Goldsmith, and Donna Goldsmith seeking injunctive relief and damages arising out of a breach of the covenant. The final judgment awarded affirmative relief to Star Tours against Travel Masters and Walter Goldsmith but not against Donna Goldsmith.

By their appeal, Travel Masters and Walter Goldsmith seek to have the trial court's judgment against them reversed. By its contemporaneous appeal, Star Tours seeks to have the trial court's judgment reversed only insofar as it denies relief on those causes which Star Tours asserted against Donna Goldsmith. We affirm the trial court's judgment insofar as it relates to Travel Masters and Walter Goldsmith. We reverse the trial court's judgment to the extent it denies relief to Star Tours against Donna Goldsmith, and we remand to the trial court all causes asserted against her.

The following facts are relevant to this appeal. On December 1, 1983, Star Tours hired Donna Goldsmith as a travel agent. On that day a written contract was entered

into between Mr. Vilaidaraga, the owner of Star Tours, and Donna. The contract was called Employee Non–Competition Agreement.

At the time that Donna was hired, her experience in the travel industry consisted of working as a reservationist at another travel agency. She indicated, however, to Mr. Vilaidaraga that she was looking for employment that would offer advanced opportunities. More specifically, she stated that her objective was management and sales. Although Donna did not have the appropriate experience at that time to perform the duties of an office manager, Mr. Vilaidaraga decided that she was capable of acquiring those skills with proper training and accordingly hired her for the position of office manager. Upon being hired, Donna executed an agreement which provided that for a two-year period following her termination of employment with Star Tours, she would not "solicit, serve or cater to or engage in, assist, be interested in or connected with any other person, firm or corporation ... soliciting, serving, or catering to any of the customers" served by Star Tours during her employment.

Mr. Vilaidaraga believed that the agreement was necessary to protect valid business interests of Star Tours for the reason that Donna, as office manager, would be intimately involved in the operation of the Dallas office and would have access to confidential material such as customer identification and airline information. Additionally, because of the training which was required, it was important that Star Tours guard against the possibility of Donna's diversion of customers after she became sufficiently skilled and experienced in the operation of a travel agency.

After hiring Donna, Mr. Vilaidaraga provided her with the assistance and training necessary for the adequate performance of her duties of office manager. Among other things, the areas of training included airline accounting, international travel, and general managerial and supervisory skills. While employed at Star Tours, Donna was in charge of the office during the periods Mr. Vilaidaraga was away at other business locations. She had a greater level of authority than other employees and was compensated on a higher basis, including commissions.

In late 1986, Donna offered to purchase the business from Mr. Vilaidaraga but was rejected. She also attempted unsuccessfully to buy out of the Employee Non–Competition Agreement. About the same time, Donna began discussions with her parents, Walter and Betty Goldsmith, about setting up their own travel agency. She admitted, however, that consideration of that idea began as early as December 1983 when she began working at Star Tours.

In November 1986, the Goldsmith family formally incorporated Travel Masters. Donna was an original incorporator and director of Travel Masters and has served as its president during its entire existence. The other principals in the corporation, including officers, directors, and incorporators, were her parents, Walter and Betty Goldsmith. Since its inception, Travel Masters has been a business entirely owned and operated by the Goldsmith family. Of the three participants, Donna was the only one with any prior experience in the travel industry.

Between November 1986 and May 1987, all actions necessary for the commencement of business operations were completed by Travel Masters with the active participation of Donna. Such activities included establishing a relationship with the Airline Reporting Corporation, the selection of office furniture, opening bank accounts, obtaining lease space, and obtaining computer equipment.

On May 4, 1987, Travel Masters opened for business. Without any prior notice, Donna ceased her employment at Star Tours and began the daily operation of business at Travel Masters. Donna admitted that when Travel Masters opened for business in May 1987, it immediately began servicing many of the customers of Star Tours. In fact, most of the business generated at that time by Travel Masters was with clients that had previously done business with Star Tours.

As a result of the above, Star Tours sued Travel Masters and Donna seeking damages and injunctive relief. The trial court granted a temporary injunction against Travel Masters and Donna. We affirmed the trial court's judgment, and the Texas Supreme Court dismissed the application for writ of error for want of jurisdiction. *Travel Masters, Inc. v. Star Tours, Inc.,* 742 S.W.2d 837 (Tex.App.—Dallas 1987, writ ref'd w.o.j.).

Prior to the case proceeding to trial on the merits, Walter Goldsmith was added as a party defendant. Star Tours sought relief against Donna Goldsmith for breach of contract and breach of fiduciary duty. It sought relief against Travel Masters for tortious interference with a contractual relationship and against Walter Goldsmith for tortious interference and conspiracy. Relief was also sought against all defendants upon additional tort theories. The only issues submitted to the jury, however, related to the tortious interference claim against Walter Goldsmith and Travel Masters. Prior to submission of the charge, the trial judge entered a directed verdict in favor of Donna Goldsmith on the basis that the noncompete agreement as a matter of law was unenforceable for lack of consideration. Based upon the jury's answer to the charge, the trial judge entered a judgment for actual and punitive damages in favor of Star Tours against Walter Goldsmith and Travel Masters.

Although the parties have taken separate appeals from adverse action by the trial judge against them, we are considering both appeals together because they involve many legal issues in common.

In their first point of error as appellants, Travel Masters and Walter Goldsmith assert that the trial court erred in rendering judgment upon the jury finding that they wrongfully interfered with the contractual relationship between Donna Goldsmith and Star Tours. Appellants argue that this claim by Star Tours was foreclosed because the illegality of the noncompetition agreement prevents it from being the subject of a wrongful interference complaint.

In the trial court, defendants Travel Masters and Donna Goldsmith asserted the affirmative defenses of illegality and lack of consideration. Defendant Walter Goldsmith, however, answered only with a general denial. Lack of consideration and illegality are affirmative defenses which must be specifically pleaded. Tex.R.Civ.P. 94. Consequently, we find that Walter Goldsmith waived any affirmative defenses that he might have had based on these grounds by failing to plead them.

Despite Walter Goldsmith's waiver of affirmative defenses, we must address Travel Masters's properly asserted defense of illegality. After a convoluted argument, Travel Masters concludes that because of its lack of consideration, the noncompetition agreement in question is illegal, void, and against public policy. Because of these aspects, it argues that the trial judge erred in relying upon the exception allowed for tortious interference with unenforceable but lawful contracts. The Texas Supreme Court held in *Clements v. Withers,* 437 S.W.2d 818, 821 (Tex.1969), that the unenforceability of a contract made for lawful purposes is no defense to an action for tortious interference with its performance. Arguing to the contrary and relying upon the law of the case doctrine, Star Tours responds that the enforceability of the agreement in question was conclusively established by this Court when we affirmed the trial court's granting of a temporary injunction based on that noncompetition agreement. *See Travel Masters,* 742 S.W.2d 837.

Without deciding whether the law of the case doctrine controls this case, we consider anew whether the agreement is enforceable. In *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670 (Tex.1990), the most recent discussion of the law of noncompetition, the Texas Supreme Court enunciated three criteria for determining the enforceability of noncompetition covenants. The three requirements are based upon "fundamental common law principles" which have been "relatively well established." *Id.* at 681. The first requirement is that the agreement "must be ancillary to an otherwise valid transaction or relationship" such as

the purchase and sale of a business or an employment relationship. *Id.* at 681–82. The second criteria is that the restraint created by the agreement "must not be greater than necessary to protect the promisee's legitimate interest." Legitimate protectable interests include business goodwill, trade secrets, and other confidential or proprietary information. Under this criterion, there must be appropriate limitations as to time, territory, and scope of activities. *Id.* at 682. Lastly, the third requirement is that the promisee's need for protection "must not be outweighed by either the hardship to the promisor or any injury likely to the public." *Id.*

In reciting these principles, the court expressly withdrew the application of "common calling" as a determinative factor. "The nature of the promisor's job—whether it is a common calling—may sometimes factor into the determination of reasonableness, but it is not the primary focus of inquiry." Instead, the determination of enforceability is based upon the application of the three criteria described above. *Id.*

■ Applying the criteria set forth in *DeSantis*, we find again that the agreement is enforceable. With regard to the first requirement, we find that the agreement was ancillary to a valid employment relationship. Donna Goldsmith signed the noncompetition agreement contemporaneously with her acceptance of employment with Star Tours. Thus, the agreement meets the first requirement set forth in *DeSantis.*[1]

With regard to the second requirement, we find that the restraint was not greater than was necessary to protect Star Tours's legitimate interests. In the competitive travel business Star Tours obviously had interests to protect. The business goodwill created by its employees and its customer list are vital to the continued success of Star Tours's business.

With regard to the third requirement, we determine that Star Tours's need for protection was not outweighed by either the hardship to Donna Goldsmith or by any injury likely to result to the public. Donna was free to continue being a travel agent anywhere she desired. The only limitation in the agreement was the prohibition against her soliciting any of Star Tours's established clients for twenty-four months. The public cannot be harmed by restricting Donna from soliciting a limited number of Star Tours's clients. In balancing the equities of the parties, we find that the need to protect Star Tours's interests outweighs the possibility that the covenant is oppressive to Travel Masters or the Goldsmiths.

Whether an agreement not to compete is a reasonable restraint of trade is a question of law for the court. *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983). We find that the requirements governing the enforceability of agreements not to compete were met in the contract between Donna and Star Tours. Consequently, we find the agreement to be enforceable as a matter of law, and we overrule appellants' first point of error.

In their second and third points of error as appellants, Travel Masters and Walter Goldsmith assert that the trial court erred in rendering judgment against them on the wrongful interference with a contractual relationship claim because there was no evidence (1) that they caused or brought about a breach of the Employee Non–Competition Agreement or (2) that their acts were the proximate cause of damages to Star Tours. For the reasons stated below, we find that the evidence is more than sufficient to support the jury findings in the affirmative on these issues.

1. In *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex.1990), Martin executed the covenant not to compete approximately three years after he began his employment with Credit Protection Association. Thus, the court found that, unlike the agreement in *DeSantis*, the noncompetition agreement was not ancillary to the employment agreement as a matter of law. The court held that a covenant not to compete which is executed on a date other than the date on which the underlying agreement is executed is enforceable only if it is supported by independent valuable consideration. Because the agreement in the present case was ancillary to an otherwise valid relationship, we need not address the question of independent valuable consideration as the *Martin* court did.

■ With respect to the jury findings that they tortiously interfered with the contractual relationship, Travel Masters and Walter Goldsmith raise only "no evidence" points. Accordingly, we must consider only the evidence tending to support the jury findings, viewing this evidence in the light most favorable to the trial court's judgment and giving effect to all reasonable inferences that may be properly drawn, disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400, 401 (Tex. 1981). If there is some evidence in support of the jury verdict, the judgment of the trial court must be affirmed. *See Liberty Film Lines, Inc. v. Porter*, 136 Tex. 49, 146 S.W.2d 982, 987 (1941).

The elements of a claim for tortious interference with an existing contract are:

a. a contract existing that was subject to interference;

b. the act of interference was willful and intentional;

c. such intentional and willful act was a proximate cause of plaintiff's damage; and

d. actual damages or loss occurred.

*Champion v. Wright*, 740 S.W.2d 848, 853 (Tex.App.—San Antonio 1987, writ denied).

■ Generally, a person commits tortious interference if he interferes with a contract either while having actual knowledge of its existence or while being aware of facts and circumstances that would lead a reasonable person to believe in the existence of the contract. *See Id.; Unitel Corp. v. Decker*, 731 S.W.2d 636, 641 (Tex. App.—Houston [14th Dist.] 1987, no writ). Travel Masters and Walter Goldsmith argue that knowledge of an agreement does not equate with inducing a breach of that agreement and that Donna Goldsmith left the employ of Star Tours on her own initiative. Thus, they argue that there is no evidence that they caused Donna to breach her contract or that their actions proximately caused Star Tours any damages. We disagree.

■ Viewing the evidence in the light most favorable to the findings, we find the evidence sufficient to establish that Travel Masters and Walter induced Donna to breach her contract with Star Tours and that such conduct resulted in damage to Star Tours. Both Donna and Walter admitted that there were conversations in which they discussed Donna's termination of her employment with Star Tours and her undertaking of the management of Travel Masters. Walter discussed employment possibilities with Donna while possessing full knowledge that Donna was subject to a covenant not to solicit or service customers of Star Tours. Thereafter, Travel Masters opened for business with an existing customer base, mostly diverted from Star Tours, without any prior advertising or promotion. The reasonable conclusion is that the participants in these earlier discussions were planning ahead that the former customer base at Star Tours, served by Donna during her employment there, would become the clientele of Travel Masters and form the basic framework of its profitability.

The jury may make certain conclusions and determinations based upon consideration of various circumstances disclosed by the direct evidence. Facts may be established by circumstantial evidence or direct evidence, or both, and the jury may consider circumstantial evidence and the logical conclusions derived therefrom in determining factual issues. *West v. Cashin*, 83 S.W.2d 1001, 1007 (Tex.Civ.App.—Galveston 1935, writ dism'd). Indeed, evidence of this character is often as strong as direct and positive evidence. *Brazos River Conservation & Reclamation Dist. v. Harmon*, 178 S.W.2d 281, 292 (Tex.Civ.App.—Eastland 1944, writ ref'd, w.o.m.). This is especially true in cases of wrongful interference, fraud, conspiracy, and the like, where the actionable conduct almost exclusively consists of subjective intent, private conversations, and secret activities. We find in the record sufficient evidence that (1) Travel Masters and Walter Goldsmith induced Donna Goldsmith to violate her agreement with Star Tours and (2) this conduct resulted in Star Tours suffering damages. Accordingly, we overrule appellants' second and third points of error.

The fourth, fifth, and sixth points of error asserted by Travel Masters and Walter Goldsmith all concern question number two of the jury charge. Question number two reads as follows:

QUESTION NO. 2

What amount of money, if any do you find would reasonably compensate Star Tours, Inc. for damages, if any proximately caused by reason of the wrongful interference, if any?

You are instructed to consider the following in arriving at the amount of damages, if any:

(a) Loss of profits in the past to Star Tours, Inc.

(b) Profits made by Travel Masters, Inc. because of such conduct to the extent not included in (a) above.

Answer in Dollars and Cents, if any?

ANSWER: $64,800

In their fourth point of error as appellants, Travel Masters and Walter complain that the trial court erred in submitting question number two to the jury because the question does not provide the proper measure of damages for lost profits. More specifically, these parties argue that the charge failed to guide the jury to a finding on any proper measure of damages because the charge fails to define "profits" or "net profits." The trial court has wide discretion in deciding which instructions and definitions are necessary and proper when submitting issues to the jury. *Security Sav. Ass'n v. Clifton*, 755 S.W.2d 925, 933 (Tex.App.—Dallas 1988, no writ); Tex. R.Civ.P. 277. At a minimum, however, the trial court must define words and other technical phrases that have a distinct legal meaning. *Id.* at 933. Profit and net profit are words of common usage whose meanings are readily understood. *See Mangham v. Hall*, 564 S.W.2d 465, 469 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). We find no error in the trial judge's failure to define the terms profit and net profit. Accordingly, we overrule appellants' fourth point of error.

In their fifth and sixth points of error as appellants, Travel Masters and Walter Goldsmith assert that the trial court erred in rendering judgment upon question number two because (1) Star Tours failed to submit evidence upon which recovery could be had for lost profits and (2) the evidence submitted for question number two was legally insufficient to allow recovery for lost profits. The measure of damages for loss of profits is net profits. Net profit is that which remains in the conduct of a business after deducting from its total receipts all of the expenses incurred in carrying on the business. *Turner v. P.V. Intern Corp.*, 765 S.W.2d 455, 465 (Tex. App.—Dallas 1988, no writ). It is not necessary in a suit to recover lost profits that the profits be susceptible of exact calculation. It is sufficient that there is evidence from which the profits can be determined with a reasonable degree of certainty. *Southwest Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098–99 (Tex.1938). For the reasons given below, we find more than sufficient evidence to determine the award of lost profits with a reasonable degree of certainty.

Star Tours is involved in both international and domestic travel services. In part, Donna Goldsmith was hired to help generate domestic business. She was paid a commission upon domestic customers that she generated. In direct violation of her noncompetition agreement, Donna solicited and sold to former Star Tours customers after the commencement of business operations of Travel Masters. The result was a loss by Star Tours of approximately ninety to ninety-five percent of its domestic travel business. The revenue that was generated from domestic travel customers was approximately $8,000 per month.

The profit ratio for the domestic travel portion of the business was approximately fifty percent. This profit ratio was determined by deducting from revenues the expenses involved specifically with generating the domestic revenue. All other business expenses and overhead costs were fixed and did not change after the loss of the domestic travel revenue. Furthermore,

not only was there the testimony of Mr. Vilaidaraga, there is also documentary evidence which reflected, by individual customers, the domestic travel business before and after the events in question. The complained of actions had an impact only upon a portion of Star Tours's business—that is, its domestic travel business. There were no effects upon international travel revenue, expenses related to International travel, and fixed expenses and overhead costs.

In *White v. Southwestern Bell Telephone Co., Inc.*, 651 S.W.2d 260 (Tex.1983), the plaintiff, Mr. White, testified as to his approximate expenses and profit margin. The court stated that his estimate as to what percentage of receipts was profits was reasonably certain because of his experience in the industry. *Id.* at 263. Thus, the court reversed the trial court's judgment and remanded the cause for a determination of damages. *Id.* In the present case, Mr. Vilaidaraga, the president of Star Tours, had fifteen years' experience in running a travel agency, and he testified as to Star Tours's approximate percentage of profits before and after the Goldsmiths opened Travel Masters. Additionally, in *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341 (Tex.Civ.App.—Waco 1979, no writ), the court held that evidence showing a total decrease in revenue of $12,000, together with the plaintiff's testimony that her profit margin was approximately five percent, was sufficient to establish lost profits of $600. *Id.* at 345. Star Tours presented the jury with more than sufficient evidence to determine the award of lost profits. Accordingly, we overrule appellants' fifth and sixth points of error.

 In their last point of error as appellants, Travel Masters and Mr. Goldsmith argue that the trial court erred in rendering judgment upon question number three in the jury charge because there was no evidence that they acted with malice. They argue that the record is devoid of *any* evidence that they acted with malice as defined in the charge, to wit, that they acted with gross indifference to the rights of another. Thus, they argue that there

was no basis to warrant the award of punitive damages. We disagree.

It was undisputed that Walter possessed actual knowledge of the existence of the agreement Donna made with Star Tours not to solicit Star Tours's customers after she left her employment. Despite this knowledge, he intentionally took specific steps for the purpose of creating a competitive business that would immediately thrive off of the domestic travel business diverted from Star Tours in violation of the agreement. We find this to be sufficient evidence of malice, especially when considering the logical inferences and reasonable conclusions that may be drawn from the direct evidence. *See Champion v. Wright*, 740 S.W.2d 848, 855 (Tex.App.—San Antonio 1987, writ denied). Accordingly, we overrule appellants' seventh point of error.

Having overruled all points of error asserted as appellants by Travel Masters and Walter Goldsmith, we now address Star Tours's appeal against Donna Goldsmith. Seeking to have the trial court's judgment reversed insofar as it holds that the noncompetition agreement is unenforceable, Star Tours asserts eleven points of error. Sustaining Star Tours's second point of error, we reverse the trial court's judgment to the extent it denies relief to Star Tours against Donna Goldsmith, and we remand to the trial court all causes asserted against her.

In its second point of error as appellant, Star Tours contends that the trial court erred in granting a directed verdict in favor of Donna Goldsmith on the breach of contract claim. Star Tours argues that the trial court erred because (1) the agreement is enforceable as a matter of law and (2) there is sufficient evidence to support the elements of the cause of action. We agree with Star Tours.

The reasonableness and enforceability of covenants similar to the one under consideration are generally question of law. *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983). At the conclusion of the evidence, the court refused to submit any special issues with respect to Star Tours's breach of contract claims against Donna

Goldsmith. Instead, the court granted a directed verdict favoring Donna Goldsmith on the basis that the agreement was not enforceable as a matter of law. To the contrary, as we have held above, as a matter of law the noncompetition agreement is enforceable. Thus, the trial court erred in granting a directed verdict on this issue. Accordingly, we sustain Star Tours's second point of error and, having done so, find no need to address its other ten points of error.

Having overruled all of Travel Masters's and Walter Goldsmith's points of error, we affirm the trial court's judgment insofar as it relates to damages awarded against these appellants in favor of Star Tours. Having sustained Star Tours's second point of error, we reverse that portion of the trial court's judgment directing a verdict in favor of Donna Goldsmith and decreeing that Star Tours take nothing as against her. We remand all causes asserted by Star Tours against Donna Goldsmith to the trial court for a new trial consistent with this opinion.