Opinion issued April 30, 2004                             












In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00811-CV
____________

TEXACO, INC., Appellant

V.

ANH THI PHAN, KHOA KIM NGUYEN, VICTOR NGUYEN, and NGOC
NGUYEN, Appellees




On Appeal from the 164th District Court 
Harris County, Texas
Trial Court Cause No. 2000-48453




O P I N I O N
          Appellant, Texaco, Inc. (“Texaco”), appeals a default judgment rendered in
favor of appellees, Anh Thi Phan, Khoa Kim Nguyen, Victor Nguyen, and Ngoc
Nguyen (collectively, “the Owners”). We determine (1) whether the evidence is
legally and factually sufficient to support the trial court’s finding that Texaco
received actual knowledge of the default judgment three days after it was mailed by
the Harris County District Clerk’s Office, (2) whether we may review Texaco’s legal
and factual sufficiency challenges relating to Texaco’s fraud liability, (3) whether the
evidence is legally and factually sufficient to support the recovery of lost-profit
damages, and (4) whether exemplary damages may be awarded in the absence of
sufficient proof of actual damages. We affirm the judgment in part, reverse it in part,
and remand the cause.Factual and Procedural History
          The Owners sued Texaco for common-law fraud, fraud in the inducement,
fraud in a real estate transaction, breach of contract, negligent misrepresentation, and
conversion, claiming that Texaco had induced them to enter into contracts to build
and to operate two Texaco stations. The Owners served Texaco through its registered
agent, Prentice Hall Corporation System, Inc. (“Prentice Hall”). After Texaco failed
to answer, the Owners moved for a default judgment, which motion the trial court
granted on April 2, 2001. Relying on the Owners’ affidavit testimony, the trial court
awarded lost-profit damages, mental-anguish damages, and exemplary damages. 
Texaco moved the trial court to determine the date that it received notice under Texas
Rule of Civil Procedure 306a, claiming that it did not receive actual notice of the
judgment until May 23, 2001. See Tex. R. Civ. P. 306a. The trial court heard this
motion and deemed the date that Texaco received notice to be April 6, 2001, three
days after notice of default judgment against Texaco was mailed by the Harris County
District Clerk’s office. Texaco timely filed notice of its restricted appeal.Rule 306a
          In its fourth point of error, Texaco contends that the evidence was legally and
factually insufficient to support the trial court’s finding under rule 306a that it
received actual knowledge of the default judgment on April 6, 2001. See Tex. R. Civ.
P. 306a. Texaco claims that it presented uncontroverted evidence that it did not
receive notice of the default judgment until May 23, 2001.



          To review a legal sufficiency challenge to the trial court’s findings, we must
first examine the record for evidence supporting the finding, while ignoring contrary
evidence. Hot Shot Messenger Serv., Inc. v. State, 798 S.W.2d 413, 415 (Tex.
App.—Austin 1990, writ denied). If there is no evidence to support the finding, we
must then examine the entire record to determine if the contrary proposition is
established as a matter of law. Id.
          Rule 306a provides that, if, within 20 days but no later than 90 days after a
judgment is signed, a party adversely affected by the judgment has neither received
the clerk’s notice nor acquired actual knowledge of the judgment, then the time for
filing of a notice of appeal begins on the date that the party received the clerk’s notice
or acquired actual knowledge of the judgment. Id. Rule 306a places the burden on
the appellant to prove the date that it received notice and that that date was more than
20 days after the judgment was signed. See Hot Shot, 798 S.W.2d at 415. We review
a trial court’s rule 306a findings under the legal and factual sufficiency standards of
review. See id. at 414. 
          Direct testimony that a letter was properly addressed, stamped, and mailed to
the addressee raised a presumption that the letter was received by the addressee in due
course.


 Id. at 415. The matters of proper addressing, stamping, and mailing may be
proved by circumstantial evidence, such as the customary mailing routine of the
sender’s business. Cooper v. Hall, 489 S.W.2d 409, 415 (Tex. Civ. App.—Amarillo
1972, writ ref’d n.r.e.). The mere denial of receipt is sufficient to rebut the
presumption. Gulf Ins. Co. v. Cherry, 704 S.W.2d 459, 461 (Tex. App.—Dallas
1986, writ ref’d n.r.e.). Although a denial of receipt may be sufficient to rebut the
presumption of receipt, the denial is not conclusive and merely presents a fact issue
for the factfinder. Cooper, 489 S.W.2d at 415. The presumption of receipt is
overcome conclusively only when “the evidence tending to support the contrary
inference is conclusive, or so clear, positive, and disinterested that it would be
unreasonable not to give effect to it as conclusive.” Employers’ Nat. Life Ins. Co. of
Dallas, Tex. v. Willits, 436 S.W.2d 918, 921 (Tex. App.—Amarillo 1968, writ ref’d
n.r.e.) (quoting Southland Life Ins. Co. v. Greenwade, 159 S.W.2d. 854, 857 (Tex.
1942). 
          Here, the Owners presented testimony by the Harris County District Clerk
raising the presumption of receipt in due course of the default judgment. The district
clerk testified that she entered the information regarding the default judgment into the
Harris County Justice Information Management System (“JIMS”). JIMS
automatically generated a notice containing all of the default-judgment information. 
The notice was then picked up by Gulf Coast Presort, a mailing service vendor, which
placed first-class postage on the notice and mailed the notice first class. The notice
was addressed to Prentice Hall, Texaco’s registered agent for service of process. 
Although there was no direct evidence of actual mailing, the clerk’s description of the
customary mailing procedures relating to the mailing of notices allowed the
presumption of receipt in due course to arise. See Cooper, 489 S.W.2d at 415. 
          Texaco presented evidence rebutting this presumption by offering the
testimony of Margaret Leak, a Prentice Hall employee, and Melinda Coultas,
secretary to Michael McQueeney, Texaco’s general counsel. Leak, one of the three
employees who worked in Prentice Hall’s Houston office, where the Owners served
their petition, testified that she did not remember receiving notice of the default
judgment. Coultas testified that she, too, did not receive notice of default judgment. 
Gregory Ulmer, a Baker & Hostetler attorney, also testified that his firm represented
Equiva Services, L.L.C., another defendant in the case, and that he had inadvertently
learned of the default judgment on May 23, 2001, when his secretary called the
district clerk’s office to check on the status of the case. Ulmer claimed that he
notified Texaco of the default judgment on this date and that this date was the first
time that Texaco had received notice of the default judgment. 
          Here, the Owners’ circumstantial evidence giving rise to the presumption of
receipt was rebutted by evidence of denial of receipt by Texaco. The trial court was
then presented with an issue of fact to resolve. See Cooper, 489 S.W.2d at 415. As
factfinder, the trial court is given great latitude to believe or to disbelieve a witness’s
testimony, particularly if the witness is interested in the outcome. See In re Doe 4,
19 S.W.3d 322, 325 (Tex. 2000). The trial court was entitled to decide whether
Texaco had presented evidence “so conclusive, or so clear, positive, and
disinterested” as to overcome the presumption of receipt, and the court resolved this
fact issue in favor of the Owners. See Willits, 436 S.W.2d at 921. Because we may
not substitute our judgment for that of the factfinder, we hold that the evidence is
legally and factually sufficient to support the trial court’s rule 306a finding. See Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998) (stating that court of
appeals may not pass upon witnesses’ credibility or substitute its judgment for that
of factfinder, even if evidence would clearly support different result). 
          We overrule Texaco’s fourth point of error.
 
Restricted Appeal
          A party filing a restricted appeal must demonstrate the following elements: (1)
appellant appealed within six months after the judgment was rendered, (2) the
appellant was a party to the suit, (3) the appellant did not participate in the actual trial
of the case, and (4) error appears on the face of the record. See Tex. R. Civ. P. 30;
Quaestor Inv., Inc. v. Chiapas, 997 S.W.2d 226, 227 (Tex. 1999).
          Because only the fourth factor is contested, we must determine whether error
appears on the face of the record. 
A.      Fraud Liability
          In its first point of error, Texaco contends that the evidence is legally and
factually insufficient to support a recovery for fraud because Texaco’s statements
involved future events. The Owners claim that Texaco may not contest fraud liability
on appeal from a no-answer default judgment. 
          A default judgment is properly granted if (1) the plaintiff files a petition that
states a cause of action, (2) the petition invokes the trial court’s jurisdiction, (3) the
petition gives fair notice to the defendant, and (4) the petition does not disclose any
invalidity of the claim on its face. Jackson v. Biotectronics, Inc., 937 S.W.2d 38, 42
(Tex. App.—Houston [14th Dist.] 1996, no writ). 
 
          A defendant’s failure to answer operates as an admission of all of the material
facts alleged in the plaintiff’s petition, except for unliquidated damages. Holt
Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992); Morgan v.
Compugraphic Corp., 675 S.W.2d 729, 731 (Tex. 1984). If the facts set out in the
petition allege a cause of action, a default judgment conclusively establishes the
defendant’s liability. Morgan, 675 S.W.2d at 731. The Texas Supreme Court has
referred to the foregoing as “two long-standing rules of Texas jurisprudence.” Id. 
           Here, Texaco asks us to review the sufficiency of the evidence as it relates to 
Texaco’s liability for fraud. Texaco maintains that, in a restricted appeal, it “is
entitled to challenge the sufficiency of the Owners’ liability proof” and that we may
review “the evidence supporting the cause of action, not just the bare allegations in
the pleadings.” Texaco argues that the Owners’ evidence is insufficient to support
a recovery for fraud because the statements by Texaco involved predictions about
future events, which statements Texaco claims are not actionable under Texas law.



Texaco also claims that the Owners’ evidence is insufficient because (1) it
incorporated “market stud[ies]” on which the Owners allegedly relied in signing the
agreements that are the basis of this suit and (2) these market studies contained only
potential estimates of sales, rather than fraudulent misrepresentations.
          A similar argument is found in Paramount Pipe & Supply Co. v. Muhr, 749
S.W.2d 491, 494-95 (Tex. 1988). In Muhr, the plaintiffs sued certain defendants for
materials and services provided to one of the defendants. Id. at 493. Muhr, one of
the defendants for whom materials and services were not provided, claimed that the
plaintiffs’ pleading disclosed the invalidity of their claims because the invoices for
services attached to the petition did not specifically mention Muhr. Id. at 495. The
court determined that the petition alleged an agency relationship and the fact that the
invoices did not specifically mention Muhr was not dispositive in his favor. Id. 
Without considering the evidence attached to the petition, the court held that nothing
in the petition affirmatively disclosed the invalidity of the plaintiffs’ claims, and the
court affirmed the default judgment. Id. 
          Texaco also cites an unpublished opinion from the Dallas Court of Appeals for
the proposition that our scope of review in determining whether the Owners were
entitled to a default judgment includes a review of both the Owners’ petition and their
evidence. See Then West, Inc./Bait House, Inc. v. Sorrells, No. 05-01-01874-CV,
2002 WL 1397477, (Tex. App.—Dallas 2002, no pet.) (not designated for
publication). In Then West, the defendant attacked the sufficiency of the plaintiff’s
pleadings, arguing that the plaintiff had alleged claims of only respondeat superior,
assault, and simple and gross negligence and that the plaintiff had failed to allege any
facts that would support a pleading of malicious conduct by one of the defendant’s
corporate agents, which facts were necessary to support the plaintiff’s punitive-damages award. Id. at 5-6. The Dallas Court of Appeals held that the plaintiff’s
petition was sufficient to establish the plaintiff’s entitlement to receive punitive
damages. Id. at 6. Although Texaco claims that Then West supports its contention
that we must review the evidence supporting the Owners’ petition, the Then West
court looked only at the plaintiff’s petition for substantiation of the plaintiff’s
allegations of malicious conduct. Id. Here, Texaco has not attacked the Owners’
petition for failure to state a cause of action.  
          The argument that a defendant cannot effectively defend itself on the issue of
damages without the ability to offer proof of liability has also been rejected. See
Fleming Mfg. Co. v. Capital Brick, Inc., 734 S.W.2d 405, 409 (Tex. App.—Austin
1987, writ ref’d n.r.e.). As the Fleming court stated:
To allow [the defendant] to now contest its liability on remand would
not only contravene the principles announced in Morgan v.
Compugraphic, supra, but would also remove all legal disabilities
incurred by [the defendant] when it failed to file an answer. We cannot
on one hand articulate the rule that a party admits all factual allegations
concerning liability when he fails to answer, and then allow such a party
to nonetheless contest its liability on remand by arguing that the liability
and damages issues are inextricably intertwined. 
Id. Thus, although we are allowed to review the legal and factual sufficiency of the
evidence supporting the Owners’ damages, we are not allowed to review the legal and
factual sufficiency of the evidence supporting Texaco’s liability. See Heine, 835
S.W.2d at 83; Morgan, 675 S.W.2d at 731.


 
We overrule Texaco’s first point of error.
B.      Lost Profit Damages 
          In its second point of error, Texaco contends that the evidence is legally and
factually insufficient to support the Owners’ recovery of lost-profit damages because
these damages were based on speculation and conjecture. Texaco argues that the
Owners’ lost profits were not proven by objective facts because (1) the Owners were
starting a new enterprise with no history of profit and (2) the Owners failed to provide
a complete calculation of lost profits because they did not present evidence of their
“net” expected profit margin.
          Recovery of lost profits does not require that the loss be susceptible to exact
calculation. See Heine, 835 S.W.2d at 84. The injured party, however, must do more
than show that it suffered some lost profits. Id. To be recoverable, lost profits must
be proven by competent evidence with reasonable certainty. Automark of Tex. v.
Disc. Trophies, 681 S.W.2d 828, 830 (Tex. App.—Dallas 1984, no writ). Opinions
or estimates of lost profits are competent evidence of lost profits if based on objective
facts, figures, or data from which the amount of lost profits can be ascertained. See
Heine, 835 S.W.2d at 84. It is not necessary to produce in court documents
supporting the opinions or estimates, although supporting documentation may affect
the weight of the evidence. Id. Recovery of lost profits must be predicated on one
complete calculation, but there is more than one correct method to calculate lost
profits. Id. at 85. 
          Lost profits must be based on net profits, not gross revenues. See id. at 83 n.1. 
“Net profits” is defined as the difference between a business’s total receipts and all
of the expenses incurred in carrying on the business. Turner v. PV Int’l Corp., 765
S.W.2d 455, 465 (Tex. App.—Dallas 1988), writ denied, 778 S.W.2d 865 (Tex. 1989)
(per curiam). 
          Texaco argues that the Owners failed to provide a complete calculation of lost
profits because they did not present evidence of their net expected profit margin. 
Texaco claims that the Owners were required either (1) to present evidence of their
actual expenses, such as employee and management expenses, employee benefits, and
depreciation, and to deduct these expenses from their gross gasoline and grocery
sales; or (2) to present evidence that the business expenses and overhead were static. 
The Owners claim that they did present evidence of their net expected profit margin,
that this evidence was a reasonable basis for the calculation of lost profits, and that
they were not required to present evidence of their business expenses.
           The Owners presented affidavit testimony supporting their claim of lost-profit
damages. The Owners computed the gasoline and grocery sales as Texaco
represented these sales would be less the actual gasoline and grocery sales during the
17 months that they operated their Texaco stations. The Owners then multiplied (1)
the difference between the represented and actual grocery sales by a profit margin



and (2) the difference between the represented and actual gasoline sales by a profit
margin per gallon of gasoline, which margin was represented by cents per gallon of
gasoline sold.


 The Owners claimed that the resulting amount represented their lost-profit damages. 
          In several cases, Texas courts have allowed evidence of expected profit margin
as a reasonable basis for the calculation of lost profits. See, e.g., White v.
Southwestern Bell Tel. Co., 651 S.W.2d 260, 262-63 (Tex. 1983); St. Paul Surplus
Lines Ins. Co. v. Dal-Worth Tank Co., 917 S.W.2d 29, 61 (Tex. App.—Amarillo
1995), rev’d on other grounds, 974 S.W.2d 51 (1998); Travel Masters, Inc. v. Star
Tours, Inc., 830 S.W.2d 614, 620-21 (Tex. App.—Dallas 1992), rev’d on other
grounds, 827 S.W.2d 830 (1992); Worldwide Anesthesia Assocs. v. Bryan Anesthesia,
Inc., 765 S.W.2d 445, 450 (Tex. App.—Houston [14th Dist.] 1988, no writ);
Magcobar N. Am. v. Grasso Oilfield Servs., Inc., 736 S.W.2d 787, 801-02 (Tex.
App.—Corpus Christi 1987, writ dism’d by agr.); Frank B. Hall & Co. v. Beach, Inc.,
733 S.W.2d 251, 258 (Tex. App.—Corpus Christi 1987, writ ref’d n.r.e.); Keller v.
Davis, 694 S.W.2d 355, 357 (Tex. App.—Houston [14th Dist.] 1985, writ ref’d
n.r.e.).
          In all but two of these cases, the profit was shown to be net profit by deducting
operating expenses. See White, 651 S.W.2d at 262-63; Travel Masters, Inc., 830
S.W.2d at 620-21; Magcobar N. Am., 736 S.W.2d at 801-02; Hall, 733 S.W.2d at
258; Keller, 694 S.W.2d at 357. In only two cases does there seem to be no
calculation of expenses. See St. Paul Surplus Lines Ins. Co., 917 S.W.2d at 61
(inexplicably requiring showing of expenses deducted for its future lost profits
analysis, but not for its past lost profits); Worldwide Anesthesia Assocs., 765 S.W.2d
at 450 (allowing past lost profits to be shown by loss of income and benefits of
shareholders because plaintiff was closely held corporation, despite jury’s having
been instructed that lost profits was difference between total amount of gross receipts
and total amount of operating expenses). We follow the mainstream authorities
requiring some showing that expenses were deducted in arriving at net profits lost. 
We decline to follow those cases in which it is not clear why the court appears to have
departed from that standard.
          The Owners did not specifically state in their affidavits whether their profit
margins represented gross profit margin or net profit margin and did not show the
method that they used to calculate their stated profit margins. However, the Owners’
affidavits indicated that they calculated lost profits by using their actual profit margin
for grocery and gasoline sales for the prior 17 months that they had operated their
stations.


 Because the Owners had operated their stores for a 17-month period, they
could have already determined their past profit margins on sales of gasoline and
groceries. Nevertheless, the Owners did not define what they meant by profit margin. 
Nowhere did the Owners address expenses, whether to say that expenses were static
or that they rose and fell according to volume of sales. We note that the dictionary
definition of “margin” is “the difference which exists between net sales and the cost
of merchandise sold and from which expenses are usually met or profits derived.” 
See Merriam-Webster’s Collegiate Dictionary 759 (11th ed. 2003). Because
the Owners failed to meet their burden of proving net profits, from which expenses
had been subtracted, we hold that the evidence is legally insufficient to prove lost-profit damages. 
          We sustain Texaco’s second point of error.



C.      Exemplary Damages
          In its third point of error, Texaco contends that the evidence is legally and
factually insufficient to support the Owners’ recovery of exemplary damages. Texaco
argues that (1) the Owners were not entitled to an automatic calculation of exemplary
damages under Texas Civil Practice and Remedies Code Section 41.003, (2) there
was insufficient evidence to show that Texaco acted with sufficient culpability to
support an award of exemplary damages, and (3) the Owners did not present proof of
the authority of the person who acted on behalf of Texaco and committed the
wrongful act. See Tex. Civ. Prac. & Rem. Code Ann. §§ 41.003 (Vernon 2004).
          It is unnecessary to address Texaco’s arguments because we have held that the
Owners are not entitled to recover actual damages; thus, they cannot recover
exemplary damages. See id. §§ 41.003(a)(1), 41.004(a). 
          We sustain Texaco’s third point of error.
Texaco’s MotionsTexaco has filed three motions to abate this appeal, claiming that we do not
have jurisdiction over the appeal because the trial court’s judgment is not final. 
Texaco argues that the default judgment is interlocutory because it did not (1) dispose
of one of the defendants, Motiva Enterprises, L.L.C.;


 (2) address the Owners’
prejudgment interest claim; and (3) adjudicate damages for Texaco’s breach of
contract and the Owners’ request for attorney’s fees. 
          A final judgment is one disposing of all issues and claims, based on the record
of the case. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001); Schlipf v.
Exxon Corp., 644 S.W.2d 453, 454 (Tex. 1982). Finality “must be resolved by a
determination of the intention of the court as gathered from the language of the decree
and the record as a whole, aided on occasion by the conduct of the parties.” 
Lehmann, 39 S.W.3d at 203 (quoting 5 Ray W. McDonald, Texas Civil Practice
§ 27:4[a], at 7 (John S. Covell ed., 1992)). 
          Here, the judgment is titled “Final Default Judgment” and contains a Mother
Hubbard clause, stating, “The Court denies all relief not expressly granted.” The
judgment was rendered after the Owners moved for default judgment because Texaco
had failed to answer or to make an appearance in the case. The judgment disposes of
all parties and all legal claims. Because the judgment did not award prejudgment
interest or attorney’s fees and stated that it denied all relief not expressly granted, the
judgment implicitly denied the Owners’ requests for prejudgment interest and
attorney’s fees. 
          We find that the judgment is final and disposed of all parties and claims.           We overrule Texaco’s motions to abate.
Conclusion
          We affirm the judgment of the trial court as to liability, and we reverse the
judgment and remand the cause for a new trial as to damages. See Heine, 835 S.W.2d
at 86 (holding that, in case of no-answer default judgment, it is appropriate to reverse
and to remand for new trial as to damages when there is no evidence of essential
element of damages). 




 Tim Taft
     Justice

Panel consists of Justices Taft, Nuchia, and Keyes.

Justice Keyes, concurring.