**TEXACO, INC., Appellant,**

v.

**Anh Thi PHAN, Khoa Kim Nguyen, Victor Nguyen, and Ngoc Nguyen, Appellees.**

No. 01–01–00811–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 30, 2004.

Gregory C. Ulmer, Reagan Wm. Simpson, King & Spalding, LLP, Houston, TX, for Appellant.

John M. O'Quinn, O'Quinn & Laminack, Tammy Tran, Tammy Tran & Associates, Lloyd E. Kelley, Lloyd Kelly & Associates, Pete Mai, Houston, TX, for Appellees.

Panel consists of Justices TAFT, NUCHIA, and KEYES.

## OPINION

TIM TAFT, Justice.

Appellant, Texaco, Inc. ("Texaco"), appeals a default judgment rendered in favor of appellees, Anh Thi Phan, Khoa Kim Nguyen, Victor Nguyen, and Ngoc Nguyen (collectively, "the Owners"). We determine (1) whether the evidence is legally and factually sufficient to support the trial court's finding that Texaco received actual knowledge of the default judgment three days after it was mailed by the Harris County District Clerk's Office, (2) whether we may review Texaco's legal and factual sufficiency challenges relating to Texaco's fraud liability, (3) whether the evidence is legally and factually sufficient to support the recovery of lost-profit damages, and (4) whether exemplary damages may be awarded in the absence of sufficient proof of actual damages. We affirm the judgment in part, reverse it in part, and remand the cause.

## Factual and Procedural History

The Owners sued Texaco for common-law fraud, fraud in the inducement, fraud in a real estate transaction, breach of contract, negligent misrepresentation, and conversion, claiming that Texaco had induced them to enter into contracts to build and to operate two Texaco stations. The Owners served Texaco through its registered agent, Prentice Hall Corporation System, Inc. ("Prentice Hall"). After Texaco failed to answer, the Owners moved for a default judgment, which motion the trial court granted on April 2, 2001. Relying on the Owners' affidavit testimony, the trial court awarded lost-profit damages, mental-anguish damages, and exemplary damages. Texaco moved the trial court to determine the date that it received notice under Texas Rule of Civil Procedure 306a, claiming that it did not receive actual notice of the judgment until May 23, 2001. See Tex.R. Civ. P. 306a. The trial court heard this motion and deemed the date that Texaco received notice to be April 6, 2001, three days after notice of default judgment against Texaco was mailed by the Harris County District Clerk's office. Texaco timely filed notice of its restricted appeal.

## Rule 306a

In its fourth point of error, Texaco contends that the evidence was legally and factually insufficient to support the trial court's finding under rule 306a that it received actual knowledge of the default judgment on April 6, 2001. See Tex.R. Civ. P. 306a. Texaco claims that it presented uncontroverted evidence that it did not receive notice of the default judgment until May 23, 2001.[1]

1. In a reply brief, the Owners claim that Texaco is not entitled to attack, through a restricted appeal, the sufficiency of the evidence to support the trial court's finding that it received actual knowledge of the default judgment on April 6, 2001. The Owners argue that Texaco may not challenge the rule 306a finding on restricted appeal because (1) the

■ To review a legal sufficiency challenge to the trial court's findings, we must first examine the record for evidence supporting the finding, while ignoring contrary evidence. *Hot Shot Messenger Serv., Inc. v. State*, 798 S.W.2d 413, 415 (Tex.App.-Austin 1990, writ denied). If there is no evidence to support the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

■ Rule 306a provides that, if, within 20 days but no later than 90 days after a judgment is signed, a party adversely affected by the judgment has neither received the clerk's notice nor acquired actual knowledge of the judgment, then the time for filing of a notice of appeal begins on the date that the party received the clerk's notice or acquired actual knowledge of the judgment. *Id.* Rule 306a places the burden on the appellant to prove the date that it received notice and that that date was more than 20 days after the judgment was signed. *See Hot Shot*, 798 S.W.2d at 415. We review a trial court's rule 306a

findings under the legal and factual sufficiency standards of review. *See id.* at 414.

■ Direct testimony that a letter was properly addressed, stamped, and mailed to the addressee raised a presumption that the letter was received by the addressee in due course.[2] *Id.* at 415. The matters of proper addressing, stamping, and mailing may be proved by circumstantial evidence, such as the customary mailing routine of the sender's business. *Cooper v. Hall*, 489 S.W.2d 409, 415 (Tex.Civ. App.-Amarillo 1972, writ ref'd n.r.e.). The mere denial of receipt is sufficient to rebut the presumption. *Gulf Ins. Co. v. Cherry*, 704 S.W.2d 459, 461 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). Although a denial of receipt may be sufficient to rebut the presumption of receipt, the denial is not conclusive and merely presents a fact issue for the factfinder. *Cooper*, 489 S.W.2d at 415. The presumption of receipt is overcome conclusively only when "the evidence tending to support the contrary inference is conclusive, or so clear, positive, and disinterested that it would be unreasonable not to give effect to it as conclusive." *Em-*

---

finding was made after the trial court granted the default judgment and (2) we may not consider evidence relating to this finding because this evidence was not before the trial court when it rendered judgment. However, Texaco timely filed its notice of restricted appeal. We have the ability to review the sufficiency of the evidence to support a trial court's findings concerning the date that a party received actual notice of a judgment under rule 306a to determine whether the trial court abused its discretion. *See Sharm, Inc. v. Martinez*, 885 S.W.2d 165, 167 (Tex. App.-Corpus Christi 1993, no writ) (holding that appellate court had jurisdiction over defendant, against whom trial court had made adverse rule 306a finding, because evidence was insufficient to support trial court's finding that defendant had failed to prove that it did not have timely notice of default judgment and, therefore, appellate court could consider merits of defendant's appeal of default judgment); *Hot Shot Messenger Serv., Inc. v. State*

*of Texas*, 798 S.W.2d 413, 414 (Tex.App.-Austin 1990, writ denied) (determining that, in appeal of default judgment, appellate court could review trial court's rule 306a findings for factual and legal sufficiency).

2. The trial court found that the notice of default judgment was received on April 6, 2001, apparently applying the three-day presumption from rule 21a. *See* TEX.R. CIV. P. 21a (providing that "[w]henever a party has the right or is required to do some act within a prescribed period after the service of a notice or other paper upon him and the notice or paper served upon by mail ..., three days shall be added to the prescribed period."). Although Texaco challenges the date of April 6, 2001 for lack of evidence supporting it, we find that the facts and circumstances of this case were sufficient to raise the presumption of receipt in due course, so that the burden remained on Texaco to overcome the presumption.

*ployers' Nat. Life Ins. Co. of Dallas, Tex. v. Willits,* 436 S.W.2d 918, 921 (Tex.App.-Amarillo 1968, writ ref'd n.r.e.) (quoting *Southland Life Ins. Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854, 857 (1942)).

■ Here, the Owners presented testimony by the Harris County District Clerk raising the presumption of receipt in due course of the default judgment. The district clerk testified that she entered the information regarding the default judgment into the Harris County Justice Information Management System ("JIMS"). JIMS automatically generated a notice containing all of the default-judgment information. The notice was then picked up by Gulf Coast Presort, a mailing service vendor, which placed first-class postage on the notice and mailed the notice first class. The notice was addressed to Prentice Hall, Texaco's registered agent for service of process. Although there was no direct evidence of actual mailing, the clerk's description of the customary mailing procedures relating to the mailing of notices allowed the presumption of receipt in due course to arise. *See Cooper,* 489 S.W.2d at 415.

Texaco presented evidence rebutting this presumption by offering the testimony of Margaret Leak, a Prentice Hall employee, and Melinda Coultas, secretary to Michael McQueeney, Texaco's general counsel. Leak, one of the three employees who worked in Prentice Hall's Houston office, where the Owners served their petition, testified that she did not remember receiving notice of the default judgment. Coultas testified that she, too, did not receive notice of default judgment. Gregory Ulmer, a Baker & Hostetler attorney, also testified that his firm represented Equiva Services, L.L.C., another defendant in the case, and that he had inadvertently learned of the default judgment on May 23, 2001, when his secretary called the district clerk's office to check on the status

of the case. Ulmer claimed that he notified Texaco of the default judgment on this date and that this date was the first time that Texaco had received notice of the default judgment.

■ Here, the Owners' circumstantial evidence giving rise to the presumption of receipt was rebutted by evidence of denial of receipt by Texaco. The trial court was then presented with an issue of fact to resolve. *See Cooper,* 489 S.W.2d at 415. As factfinder, the trial court is given great latitude to believe or to disbelieve a witness's testimony, particularly if the witness is interested in the outcome. *See In re Doe 4,* 19 S.W.3d 322, 325 (Tex.2000). The trial court was entitled to decide whether Texaco had presented evidence "so conclusive, or so clear, positive, and disinterested" as to overcome the presumption of receipt, and the court resolved this fact issue in favor of the Owners. *See Willits,* 436 S.W.2d at 921. Because we may not substitute our judgment for that of the factfinder, we hold that the evidence is legally and factually sufficient to support the trial court's rule 306a finding. *See Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998) (stating that court of appeals may not pass upon witnesses' credibility or substitute its judgment for that of factfinder, even if evidence would clearly support different result).

We overrule Texaco's fourth point of error.

### Restricted Appeal

■ A party filing a restricted appeal must demonstrate the following elements: (1) appellant appealed within six months after the judgment was rendered, (2) the appellant was a party to the suit, (3) the appellant did not participate in the actual trial of the case, and (4) error appears on the face of the record. *See* TEX.R. CIV. P. 30; *Quaestor Inv., Inc. v. Chiapas,* 997 S.W.2d 226, 227 (Tex.1999).

Because only the fourth factor is contested, we must determine whether error appears on the face of the record.

## A. Fraud Liability

In its first point of error, Texaco contends that the evidence is legally and factually insufficient to support a recovery for fraud because Texaco's statements involved future events. The Owners claim that Texaco may not contest fraud liability on appeal from a no-answer default judgment.

 A default judgment is properly granted if (1) the plaintiff files a petition that states a cause of action, (2) the petition invokes the trial court's jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the petition does not disclose any invalidity of the claim on its face. *Jackson v. Biotectronics, Inc.*, 937 S.W.2d 38, 42 (Tex.App.-Houston [14th Dist.] 1996, no writ).

 A defendant's failure to answer operates as an admission of all of the material facts alleged in the plaintiff's petition, except for unliquidated damages. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992); *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). If the facts set out in the petition allege a cause of action, a default judgment conclusively establishes the defendant's liability. *Morgan*, 675 S.W.2d at 731. The Texas Supreme Court has referred to the foregoing as "two long-standing rules of Texas jurisprudence." *Id.*

 Here, Texaco asks us to review the sufficiency of the evidence as it relates to Texaco's liability for fraud. Texaco maintains that, in a restricted appeal, it "is entitled to challenge the sufficiency of the Owners' liability proof" and that we may review "the evidence supporting the cause of action, not just the bare allegations in the pleadings." Texaco argues that the Owners' evidence is insufficient to support a recovery for fraud because the statements by Texaco involved predictions about future events, which statements Texaco claims are not actionable under Texas law.[3] Texaco also claims that the Owners' evidence is insufficient because (1) it incorporated "market stud[ies]" on which the Owners allegedly relied in signing the agreements that are the basis of this suit and (2) these market studies contained only potential estimates of sales, rather than fraudulent misrepresentations.

A similar argument is found in *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex.1988). In *Muhr*,

---

**3.** We note that Texaco does not argue in its briefs that the Owners' petition is insufficient as a matter of law for failing to plead a cause of action. Texaco does not point to any portion of the Owners' petition that disclosed on its face invalidity of their fraud claim in that the petition failed sufficiently to allege the facts or elements necessary to support their claims. Even if Texaco had made such an allegation, we have reviewed the Owners' petition and find that it sufficiently alleged all of the necessary elements of and facts supporting their fraud claim. Specifically, the Owner's petition alleged the following:

> [Texaco's] representations were therefore false and the representations concerned material facts. [Texaco] made the material representations with knowledge of their fal-

sity or recklessly without any knowledge of the truth and as a positive assertion.

Although a representation involves future events, it may be fraudulent if it was made with present knowledge of the representation's falsity. *Bryant v. Transcon. Gas Pipe Line Corp.*, 821 S.W.2d 187, 190 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (holding that statement of opinion or prediction about future is actionable if made with present knowledge that statement is false or with present intent to deceive). The Owners' allegations in their petition, which allegations are now deemed admitted by Texaco, stated that Texaco made the representations with knowledge of their falsity. Therefore, the Owners sufficiently pleaded their fraud claim. *See id.*

the plaintiffs sued certain defendants for materials and services provided to one of the defendants. *Id.* at 493. Muhr, one of the defendants for whom materials and services were not provided, claimed that the plaintiffs' pleading disclosed the invalidity of their claims because the invoices for services attached to the petition did not specifically mention Muhr. *Id.* at 495. The court determined that the petition alleged an agency relationship and the fact that the invoices did not specifically mention Muhr was not dispositive in his favor. *Id.* Without considering the evidence attached to the petition, the court held that nothing in the petition affirmatively disclosed the invalidity of the plaintiffs' claims, and the court affirmed the default judgment. *Id.*

Texaco also cites an unpublished opinion from the Dallas Court of Appeals for the proposition that our scope of review in determining whether the Owners were entitled to a default judgment includes a review of both the Owners' petition and their evidence. *See Then West, Inc./Bait House, Inc. v. Sorrells,* No. 05–01–01874–CV, 2002 WL 1397477, (Tex.App.-Dallas 2002, no pet.) (not designated for publication). In *Then West,* the defendant attacked the sufficiency of the plaintiff's pleadings, arguing that the plaintiff had alleged claims of only respondeat superior, assault, and simple and gross negligence and that the plaintiff had failed to allege any facts that would support a pleading of malicious conduct by one of the defendant's corporate agents, which facts were necessary to support the plaintiff's punitive-damages award. *Id.* at 5–6. The Dallas Court of Appeals held that the plaintiff's petition was sufficient to establish the plaintiff's entitlement to receive punitive damages. *Id.* at 6. Although Texaco claims that *Then West* supports its contention that we must review the evidence supporting the Owners' petition, the *Then West* court looked only at the plaintiff's petition for substantiation of the plaintiff's allegations of malicious conduct. *Id.* Here, Texaco has not attacked the Owners' petition for failure to state a cause of action.

The argument that a defendant cannot effectively defend itself on the issue of damages without the ability to offer proof of liability has also been rejected. *See Fleming Mfg. Co. v. Capitol Brick, Inc.,* 734 S.W.2d 405, 409 (Tex.App.-Austin 1987, writ ref'd n.r.e.). As the *Fleming* court stated:

> To allow [the defendant] to now contest its liability on remand would not only contravene the principles announced in *Morgan v. Compugraphic, supra,* but would also remove all legal disabilities incurred by [the defendant] when it failed to file an answer. We cannot on one hand articulate the rule that a party admits all factual allegations concerning liability when he fails to answer, and then allow such a party to nonetheless contest its liability on remand by arguing that the liability and damages issues are inextricably intertwined.

*Id.* Thus, although we are allowed to review the legal and factual sufficiency of the evidence supporting the Owners' damages, we are not allowed to review the legal and factual sufficiency of the evidence supporting Texaco's liability. *See Heine,* 835 S.W.2d at 83; *Morgan,* 675 S.W.2d at 731.[4]

We overrule Texaco's first point of error.

4. Texaco cites *Osteen v. Osteen,* 38 S.W.3d 809, 814 (Tex. App.-Houston [14th Dist.] 2001, no pet.) and *Casino Magic Corp. v. King,* 43 S.W.3d 14, 20 (Tex.App.-Dallas 2001, pet. denied), as further support for the proposition that liability evidence may be subjected to a sufficiency review in a restricted appeal. However, these cases are distinguishable. *Osteen* is inapplicable because it involved a default judgment of divorce. *See id.* (holding that, as general rule, no evidence is required to support default judgment, but that, in context of divorce, rule is narrower because (1)

## B. Lost Profit Damages

In its second point of error, Texaco contends that the evidence is legally and factually insufficient to support the Owners' recovery of lost-profit damages because these damages were based on speculation and conjecture. Texaco argues that the Owners' lost profits were not proven by objective facts because (1) the Owners were starting a new enterprise with no history of profit and (2) the Owners failed to provide a complete calculation of lost profits because they did not present evidence of their "net" expected profit margin.

 Recovery of lost profits does not require that the loss be susceptible to exact calculation. *See Heine*, 835 S.W.2d at 84. The injured party, however, must do more than show that it suffered some lost profits. *Id.* To be recoverable, lost profits must be proven by competent evidence with reasonable certainty. *Automark of Tex. v. Disc. Trophies*, 681 S.W.2d 828, 830 (Tex.App.-Dallas 1984, no writ). Opinions or estimates of lost profits are competent evidence of lost profits if based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *See Heine*, 835 S.W.2d at 84. It is not necessary to produce in court documents supporting the opinions or estimates, although supporting documentation may affect the weight of the evidence. *Id.* Recovery of lost profits must be predicated on one complete calculation, but there is more than one correct method to calculate lost profits. *Id.* at 85.

 Lost profits must be based on net profits, not gross revenues. *See id.* at 83 n. 1. "Net profits" is defined as the difference between a business's total receipts and all of the expenses incurred in carrying on the business. *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 465 (Tex.App.-Dallas 1988), *writ denied*, 778 S.W.2d 865 (Tex.1989) (per curiam).

 Texaco argues that the Owners failed to provide a complete calculation of lost profits because they did not present evidence of their net expected profit margin. Texaco claims that the Owners were required either (1) to present evidence of their actual expenses, such as employee and management expenses, employee benefits, and depreciation, and to deduct these expenses from their gross gasoline and grocery sales; or (2) to present evidence that the business expenses and overhead were static. The Owners claim that they did present evidence of their net expected profit margin, that this evidence was a reasonable basis for the calculation of lost profits, and that they were not required to present evidence of their business expenses.

The Owners presented affidavit testimony supporting their claim of lost-profit damages. The Owners computed the gasoline and grocery sales as Texaco represented these sales would be less the actual gasoline and grocery sales during the 17 months that they operated their Texaco stations. The Owners then multiplied (1) the difference between the represented and actual grocery sales by a profit margin[5] and (2) the difference between the

---

respondent's failure to answer or to appear is taken as admission of allegations in petition relating only to residence and domicile and (2) even if the respondent fails to file answer, petitioner must adduce proof to support material allegations in petition). *Casino* is inapplicable because it involved an employer's ap-

peal from a child support wage withholding order, as opposed to an appeal from a default judgment. *See id.*, 43 S.W.3d at 20.

5. Both Phan's and Victor Nguyen's affidavit testimony indicated that their expected profit margin for grocery sales was 30%.

represented and actual gasoline sales by a profit margin per gallon of gasoline, which margin was represented by cents per gallon of gasoline sold.[6] The Owners claimed that the resulting amount represented their lost-profit damages.

In several cases, Texas courts have allowed evidence of expected profit margin as a reasonable basis for the calculation of lost profits. *See, e.g., White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262–63 (Tex.1983); *St. Paul Surplus Lines Ins. Co. v. Dal–Worth Tank Co.*, 917 S.W.2d 29, 61 (Tex.App.-Amarillo 1995), *rev'd on other grounds*, 974 S.W.2d 51 (1998); *Travel Masters, Inc. v. Star Tours, Inc.*, 830 S.W.2d 614, 620–21 (Tex.App.-Dallas 1992), *rev'd on other grounds*, 827 S.W.2d 830 (1992); *Worldwide Anesthesia Assocs. v. Bryan Anesthesia, Inc.*, 765 S.W.2d 445, 450 (Tex.App.-Houston [14th Dist.] 1988, no writ); *Magcobar N. Am. v. Grasso Oilfield Servs., Inc.*, 736 S.W.2d 787, 801–02 (Tex.App.-Corpus Christi 1987, writ dism'd by agr.); *Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 258 (Tex.App.-Corpus Christi 1987, writ ref'd n.r.e.); *Keller v. Davis*, 694 S.W.2d 355, 357 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.).

In all but two of these cases, the profit was shown to be net profit by deducting operating expenses. *See White*, 651 S.W.2d at 262–63; *Travel Masters, Inc.*, 830 S.W.2d at 620–21; *Magcobar N. Am.*, 736 S.W.2d at 801–02; *Hall*, 733 S.W.2d at 258; *Keller*, 694 S.W.2d at 357. In only two cases does there seem to be no calculation of expenses. *See St. Paul Surplus Lines Ins. Co.*, 917 S.W.2d at 61 (inexplica-

bly requiring showing of expenses deducted for its future lost profits analysis, but not for its past lost profits); *Worldwide Anesthesia Assocs.*, 765 S.W.2d at 450 (allowing past lost profits to be shown by loss of income and benefits of shareholders because plaintiff was closely held corporation, despite jury's having been instructed that lost profits was difference between total amount of gross receipts and total amount of operating expenses). We follow the mainstream authorities requiring some showing that expenses were deducted in arriving at net profits lost. We decline to follow those cases in which it is not clear why the court appears to have departed from that standard.

The Owners did not specifically state in their affidavits whether their profit margins represented gross profit margin or net profit margin and did not show the method that they used to calculate their stated profit margins. However, the Owners' affidavits indicated that they calculated lost profits by using their actual profit margin for grocery and gasoline sales for the prior 17 months that they had operated their stations.[7] Because the Owners had operated their stores for a 17-month period, they could have already determined their past profit margins on sales of gasoline and groceries. Nevertheless, the Owners did not define what they meant by profit margin. Nowhere did the Owners address expenses, whether to say that expenses were static or that they rose and fell according to volume of sales. We note that the dictionary definition of "margin" is "the difference which exists between net sales and the cost of merchandise sold and

---

6. Phan's affidavit testimony indicated that her expected profit margin for gasoline sales was five cents per gallon sold. Victor Nguyen's affidavit testimony indicated that his expected profit margin for gasoline sales was 10 cents per gallon sold.

7. Phan's affidavit stated that, during these 17 months, "[t]he store had a profit margin of 30% for grocery sales and (5) cents for each gallon of motor fuel sales." Victor Nguyen's affidavit stated, "The store had a profit margin of 30% for grocery sales and (10) cents for each gallon of motor fuel sales."

from which expenses are usually met or profits derived." *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 759 (11th ed.2003). Because the Owners failed to meet their burden of proving net profits, from which expenses had been subtracted, we hold that the evidence is legally insufficient to prove lost-profit damages.

We sustain Texaco's second point of error.[8]

## C. Exemplary Damages

In its third point of error, Texaco contends that the evidence is legally and factually insufficient to support the Owners' recovery of exemplary damages. Texaco argues that (1) the Owners were not entitled to an automatic calculation of exemplary damages under Texas Civil Practice and Remedies Code Section 41.003, (2) there was insufficient evidence to show that Texaco acted with sufficient culpability to support an award of exemplary damages, and (3) the Owners did not present proof of the authority of the person who acted on behalf of Texaco and committed the wrongful act. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 41.003 (Vernon 2004).

It is unnecessary to address Texaco's arguments because we have held that the Owners are not entitled to recover actual damages; thus, they cannot recover exemplary damages. *See id.* §§ 41.003(a)(1), 41.004(a).

We sustain Texaco's third point of error.

### Texaco's Motions

Texaco has filed three motions to abate this appeal, claiming that we do not have jurisdiction over the appeal because the trial court's judgment is not final. Texaco argues that the default judgment is interlocutory because it did not (1) dispose of one of the defendants, Motiva Enterprises, L.L.C.;[9] (2) address the Owners' prejudgment interest claim; and (3) adjudicate damages for Texaco's breach of contract and the Owners' request for attorney's fees.

A final judgment is one disposing of all issues and claims, based on the record of the case. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex.2001); *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex.1982). Finality "must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties." *Lehmann*, 39 S.W.3d at 203 (quoting 5 RAY W. MCDONALD, TEXAS CIVIL PRACTICE § 27:4[a], at 7 (John S. Covell ed., 1992)).

Here, the judgment is titled "Final Default Judgment" and contains a Mother Hubbard clause, stating, "The Court denies all relief not expressly granted." The judgment was rendered after the Owners moved for default judgment because Texaco had failed to answer or to make an appearance in the case. The judgment disposes of all parties and all legal claims.

---

8. Because of our disposition of Texaco's second point of error, it is unnecessary for us to address its fifth point of error complaining of lack of notice of the hearing.

9. In their original petition, the Owners named as a defendant "Starfires a/k/a Star Enterprises a/k/a Equiva Services, L.L.C. a/k/a Motiva Enterprises, L.L.C." The Owners then non-suited "Starfires a/k/a Star Enterprises a/k/a Equiva Services, L.L.C." Texaco argues that,

because Motiva Enterprises, L.L.C. ("Motiva") was not named in the Owners' motion for non-suit, it is still a party defendant and, therefore, the default judgment is not final. However, the Owners were not required to non-suit Motiva because Motiva was only an a/k/a ("also known as") designation for then-defendant Starfires, Motiva was never named as a party defendant, relief was not specifically sought against Motiva, and service was never attempted on Motiva.

Because the judgment did not award prejudgment interest or attorney's fees and stated that it denied all relief not expressly granted, the judgment implicitly denied the Owners' requests for prejudgment interest and attorney's fees.

We find that the judgment is final and disposed of all parties and claims. We overrule Texaco's motions to abate.

## Conclusion

We affirm the judgment of the trial court as to liability, and we reverse the judgment and remand the cause for a new trial as to damages. *See Heine*, 835 S.W.2d at 86 (holding that, in case of no-answer default judgment, it is appropriate to reverse and to remand for new trial as to damages when there is no evidence of essential element of damages).

Justice KEYES, concurring.

EVELYN V. KEYES, Justice, concurring.

I agree with the disposition of this case. I write separately because I believe the opinion understates appellees' burden of proof of damages on remand. It is well settled that a default judgment operates as an admission of all allegations set out in the plaintiff's petition except unliquidated damages and is, therefore, an admission of liability. *Stra, Inc. v. Seafirst Commercial Corp.*, 727 S.W.2d 591, 593 (Tex.App.-Houston [1st Dist.] 1987, no writ). However, a defaulting defendant does not admit that the event sued upon *caused* any of the plaintiff's alleged injuries. *Boat Superstore, Inc. v. Haner*, 877 S.W.2d 376, 379 (Tex.App.-Houston [1st Dist.] 1994, no writ). Rather, a court that renders a default judgment must hear evidence of unliquidated damages. Tex.R. Civ. P. 243; *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992).

At the damage assessment hearing, the plaintiff is obliged not only to come forward with sufficient competent evidence to establish the amount of alleged damages, *but also to show a causal nexus* between the event sued upon and the resulting injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex.1984). Proving that the event sued upon caused the injuries claimed by the plaintiff is part and parcel of proving the amount of damages to which the plaintiff is entitled. *Id.* The causal nexus requirement is met by pleading and proof that establishes a direct causal link between the damages awarded, the actions of the defendant, and the injury suffered. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 182, 183 (Tex.1995). The fact that a defendant has defaulted—thereby admitting his liability—does not give the plaintiff a right to recover for damages that did not arise from his cause of action. *Id.; Boat Superstore, Inc.*, 877 S.W.2d 376 at 379.

Here, appellees pleaded that they suffered damages for lost profits in the amount of the difference between their expected profits at the two sites they owned (the Katy location and the Texas City location) as fraudulently projected in Texaco's Gasoline Volume Forecast (GVF) and the actual profits appellees realized at those sites. Texaco's default operated as an admission that the projections in the GVF were false, that Texaco knew they were false, and that Texaco intended appellees to rely on them in making their investment decision. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex.1992) (reciting elements of fraud). Appellees still had to prove, however, that Texaco's misrepresentations caused them to lose profits.

The only proof of damages submitted to the trial court was appellees' affidavits, not the GVF itself. In those affidavits, appellees determined their lost profits by subtracting their actual profits at the Katy

and Texas City locations from the total projected sales for groceries and gasoline set out in the GVF. Appellees averred that the GVF fraudulently projected they would realize grocery sales of $75,000 a month and gasoline sales of 120,516 gallons a month at the Katy location, but they realized actual grocery sales of only $55,000 per month and actual motor fuel sales of 60,000 gallons a month. They further averred that the GVF fraudulently projected they would realize grocery sales of $65,000 a month and gasoline sales of 80,134 gallons a month at the Texas City location, but they realized actual grocery sales of only $35,000 per month and actual motor fuel sales of 32,000 gallons a month at that location. Since they claimed that each store had a profit margin of 30% on grocery items and 5¢ a gallon on gasoline, they simply applied these figures to their actual sales to determine their actual profits. They then subtracted their actual profits from the profits they claim they would have made had Texaco's projected sales of gasoline and groceries at those sites been accurate.

Lost profits are not shown where nothing in the record relates the total amount of profits the plaintiff expects to make to profits actually lost as a result of the defendant's wrongful act. *Szczepanik*, 883 S.W.2d at 649; *see also Haynes & Boone*, 896 S.W.2d at 182, 183 (holding that, in default judgment case, shopping center landlord did not establish causal nexus between legal malpractice and foreclosure on shopping center where there was no evidence that tenant's vacating premises was result of any act of attorney; attorney's acts were not producing cause of foreclosure); Nothing in the evidence presented by appellees at the hearing on damages established a direct causal link between Texaco's misrepresentations about total profits, and the lost profits damages claimed by appellees and awarded by the trial court. I would hold that appellees

have failed to produce any evidence of a causal relation between Texaco's sales projections and the lower profits realized by appellees and therefore have failed to establish a causal nexus between Texaco's misrepresentations and their own claimed lost profit damages.

Nor do I agree with the appellees that their affidavits provide competent evidentiary support for their claim of lost-profit damages. To prove damages in the form of lost profits, a plaintiff must do more than show that he suffered some lost profits. *Szczepanik v. First So. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994); *SBC Operations, Inc. v. The Bus. Equation, Inc.*, 75 S.W.3d 462, 466 (Tex.App.-San Antonio 2001, pet. denied). While recovery of lost profits does not require that the loss be susceptible to exact calculation, the amount of the loss must be shown by competent evidence with reasonable certainty. *Szczepanik*, 883 S.W.2d at 649. This is a fact intensive determination, requiring, at a minimum, opinions or estimates of lost profits based on objective facts, figures, or data from which the amount of lost profits may be ascertained, although the documentation supporting the opinions or estimates need not be produced in court. *Id; Holt Atherton*, 835 S.W.2d at 84; *SBC Operations, Inc.*, 75 S.W.3d at 466. The correct measure of damages is lost net profits, not gross profits. *Holt Atherton*, 835 S.W.2d at 83 n. 1.

Mere evidence that the plaintiff expected to make a profit within a certain range at a certain time is legally insufficient to show lost profits. *Szczepanik*, 883 S.W.2d at 649; *see also Holt Atherton*, 835 S.W.2d at 85 (in default judgment case, where plaintiffs did not specify which contracts were lost as result of unavailability of bulldozer, how much profit they would have had from those contracts, or who would have awarded them contracts, bare asser-

tion that contracts were lost did not demonstrate reasonably certain objective determination of lost profits). The evidence must show to a reasonable certainty the profits actually lost as a result of the defendant's wrongful acts. *See Szczepanik,* 883 S.W.2d at 649.

While it is true that the supporting documentation for opinions or estimates of lost profits need not be shown in court, appellees here presented no evidence regarding the cause for the discrepancy in either sales or profits between those Texaco projected and those they actually realized. Instead, they conclusorily *averred* that they enjoyed a 30% profit margin on grocery items and 5¢ on gasoline, without indicating whether those figures represented gross profits or net profits, without showing how the figures were calculated, and without showing how their actual profits related to Texaco's sales projections, *e.g.,* whether Texaco projected profits based on its projected number of sales, or whether its sales or profit projections were qualified in any way. Thus, I would hold that not only did appellees fail to prove their claimed damages for lost profits with the required specificity, but also that their affidavits merely show that they expected to make a profit within a certain range at a certain time and are therefore legally insufficient to show lost profits. *See id.; Holt Atherton,* 835 S.W.2d at 84.

Finally, appellees overlook the test for recovery of lost profits by a new business set out in *Texas Instruments, Inc. v. Teletron Energy Management, Inc.,* 877 S.W.2d 276 (Tex.1994). It is true that an enterprise is not prohibited from recovering lost profits merely because it is new when there are firmer reasons to expect a profit than the mere hope of success for an untried enterprise. *Id.* at 279–80. Thus, when an activity is ongoing, but is conducted, for example, by a newly formed subsidiary controlled and managed by the same

company, recovery for lost profits should not be denied simply because the same activity is conducted by a subsidiary newly formed for that purpose. *Id.; see also Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097, 1098–1099 (1938). However, under *Teletron,* even where only an entity changes and not an ongoing activity, the plaintiff must still provide proof that the experience of the persons involved in the enterprise, the nature of the business activity, and the relevant market were such that the drop in profits is reasonably certain to have been caused by the defendant's wrongful act. *See Teletron,* 877 S.W.2d at 280.

Here, the activity was ongoing only in the broadest sense: there was no ongoing activity of grocery and gasoline sales made by appellees at the two locations at issue. Rather, although the products being sold here were neither new nor untested, the stations owned by appellees were newly built and had no sales history against which to compare appellees' actual sales. Nor is there any proof that appellees had the requisite experience to operate service stations successfully. And there is no evidence regarding the relevant market. Thus, I would hold that, on this ground as well, appellees failed to satisfy their burden that they come forward with sufficient competent evidence to establish the amount of their lost profits with reasonable certainty. *See Holt Atherton,* 835 S.W.2d at 84; *Morgan,* 675 S.W.2d at 732.

I would hold that appellees have neither established a causal nexus between their alleged damages and Texaco's projections nor provided competent evidence from which the amount of their allegedly lost profits could be calculated with reasonable certainty. When an appellate court finds that there is no evidence to support an essential element of a claim for damages after an uncontested hearing on unliqui-

dated damages in a no-answer default judgment, it must remand the cause for new trial on the issue of unliquidated damages. *Holt Atherton,* 835 S.W.2d at 86. I therefore concur in the judgment reversing and remanding this case for a new trial on damages.