Opinion issued July 2, 2009











In The
Court of Appeals
For The
First District of Texas




NO. 01-09-00150-CV




IN RE HALLIBURTON COMPANY, Relator




Original Proceeding on Petition for Writ of Mandamus




MEMORANDUM OPINION

          By petition for writ of mandamus, relator, Halliburton Company, challenges
the trial court’s


 February 9, 2009 order denying its motion to compel arbitration
under the Federal Arbitration Act (“FAA”).
          We conditionally grant the petition for writ of mandamus. 
 
Background
O’Beirne Begins Working for Halliburton
          Real party in interest, Scott O’Beirne, worked for Halliburton Energy Services
from 2000 to 2007.


 In February 2000, O’Beirne signed the offer letter to indicate his
acceptance of employment. The offer letter stated:
Your acceptance of employment means you also agree to and are bound
by the terms of the Halliburton Dispute Resolution Program, effective
January 1, 1998. The Halliburton Dispute Resolution Program binds the
employee and the Company to handle workplace problems through a
series of measures designed to bring timely resolution. This will be true
both during your employment and after your employment should you
terminate. Enclosed for your review is a brief introduction pamphlet.
 
The offer letter stated February 17, 2000, as O’Beirne’s anticipated start date.
          On February 16, 2000, O’Beirne signed a one-page document entitled “Dispute
Resolution Agreement,” which stated:
I have received a copy of the Halliburton Dispute Resolution Plan
materials including Plan documents and rules and have read, understand
and agree to comply with its policies and procedures. Accordingly, I
voluntarily submit my dispute with Halliburton Energy Services to the
Halliburton Dispute Resolution Plan (DRP). Furthermore, I agree and
understand that the final step in the DRP is binding arbitration.
 
          The DRP materials were an explanatory pamphlet entitled “Options for
Resolution” and the “Dispute Resolution Plan and Rules.” Together these materials
outline the available options for resolving disputes, including informal conversation
(“the Open Door Option”), internal conferences, mediation, and arbitration. The 2001
reprint of the “Dispute Resolution Plan and Rules” defines “dispute” as “all legal and
equitable claims, demands, and controversies, of whatever nature or kind, whether in
contract, tort, under statute or regulation, or some other law . . . .”
Early Retirement & Suit for Benefits
          In 2007, O’Beirne took early retirement from Halliburton. In March 2008,
O’Beirne sued Halliburton for failing to pay him certain accrued benefits and bonuses
that he alleged were due upon his retirement. Halliburton responded with a general
denial, pleading that O’Beirne was contractually obligated to arbitrate his claims. 
Motion to Compel
          In July 2008, Halliburton moved to compel arbitration and to dismiss or stay
the trial court proceedings. Halliburton argued that O’Beirne accepted the terms and
conditions of the DRP twice in writing and by his continued employment with
Halliburton after Halliburton mailed a copy of the DRP to its employees in 2001. 
Halliburton also argued that O’Beirne’s claims fall within the scope of the arbitration
agreement because the DRP is broadly written to include “all legal and equitable
claims” including “employee benefits or incidents of employment with the company.” 
Halliburton argued that O’Beirne’s claims for unpaid bonuses and benefits were
squarely within the scope of the arbitration agreement. 
O’Beirne’s Response to the Motion to Compel
          In response to Halliburton’s motion to compel arbitration, on September 9,
2008, O’Beirne filed an affidavit disputing that he was bound by any arbitration
agreement and disputing that he received the DRP materials that were attached to
Halliburton’s motion to compel arbitration.
Amended Motion to Compel Arbitration
          On September 29, 2008, Halliburton filed an amended motion to compel
arbitration, elaborating on the Fall 2001 mail-out of the DRP materials to its
employees and attaching affidavits to prove that the materials were actually sent to
O’Beirne.
          In particular, Halliburton provided affidavits from Melinda Miner, Theresa
Plaxco, and Ronald Garrow. Melinda Miner testified by affidavit that she provided
employee addresses to Theresa Plaxco of Verizon, who in turn worked with National
Mail Advertising, Inc. to mail the documents to Halliburton’s employees. Miner also
stated, “Following the Fall 2001 mail-out of the Program materials to all employees,
Halliburton received and maintained a record of all packets found undeliverable by
the Post Office and subsequently returned to Halliburton. The packet sent to Scott
O’Beirne in 2001 was not returned.” Theresa Plaxco testified by affidavit that she
printed a cover letter and certain DRP materials for inclusion in the mail-out and
provided them, along with the employee addresses, to National Mail Advertising for
mailing. Ronald Garrow, the president of National Mail Advertising, testified by
affidavit that his company addressed the packets using the employee addresses
provided to them by Theresa Plaxco, ensured all packets bore Halliburton’s return
address, and mailed them.
The HearingAt a non-evidentiary hearing in February 2009, O’Beirne’s attorneys argued
that he never received the DRP materials that were mailed out, although no affidavit
testimony supported that contention. The parties also argued about the meaning of
“dispute” for the arbitration agreement. After this hearing, the trial court denied
Halliburton’s motion to compel arbitration, and Halliburton filed its petition for writ
of mandamus.
Mandamus
          In response to the petition for writ of mandamus, O’Beirne asserts arguments 
that were never presented in the trial court. O’Beirne now argues that the DRP is
illusory because Halliburton reserved the right to amend the DRP rules by serving
notice to AAA, JAMS, and CPR, but not to employees. O’Beirne argues also that
there is a fact question about whether he agreed to be bound by the 1999 DRP
because the employment-offer letter referred to the DRP that was effective on January
1, 1998. O’Beirne contends that Halliburton provided the trial court with the wrong
version of the DRP, an argument he did not advance in the trial court. Finally,
O’Beirne argues that Halliburton’s evidence regarding the mail-out fails to establish
the presumption that O’Beirne received them because no affidavit stated that proper
postage was affixed to the packets or whether the packets were mailed by U.S. Postal
Service or using a private vendor.
Standard of Review
Mandamus
          The parties agree that the Federal Arbitration Act (“the FAA”) applies to this
case. 9 U.S.C. § 2 (2008). “A party denied the right to arbitrate under the Federal
Arbitration Act by a state court has no adequate remedy by appeal and is entitled to
mandamus relief to correct a clear abuse of discretion.” In re L & L Kempwood
Assocs., L.P., 9 S.W.3d 125, 128 (Tex. 1999) (per curiam). We review de novo
whether an enforceable agreement to arbitrate exists. In re Jindal Saw, 264 S.W.3d
755, 761 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding).
 
 
Arbitration
          When a party asserts a right to arbitrate under the FAA, the question of whether
the dispute is subject to arbitration is determined under federal law. Prudential Secs.
Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995). As a matter of federal law, any
doubts concerning the scope of arbitrable issues are resolved in favor of arbitration,
whether pertaining to the construction of the contract or a defense to arbitration. See
In re Serv. Corp. Int’l, 85 S.W.3d 171, 174 (Tex. 2002). In determining whether to
compel arbitration, a court must decide two issues: (1) whether a valid, enforceable
arbitration agreement exists and, (2) if so, whether the claims asserted fall within the
scope of the agreement. In re Tenet Healthcare, Ltd., 84 S.W.3d 760, 765 (Tex.
App.—Houston [1st Dist.] 2002, orig. proceeding) (citing In re Oakwood Mobile
Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999)). A court has no discretion and must
compel arbitration if the answer to both questions is affirmative. In re Tenet
Healthcare, Ltd., 84 S.W.3d at 765. “An order to arbitrate should not be denied
unless it can be said with positive assurance that the arbitration clause is not
susceptible of an interpretation that covers the asserted dispute.” Hou-Scape, Inc. v.
The Honorable Russell Lloyd, 945 S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.]
1997, no writ) (citing United Steelworkers v. Warrior & Gulf Navigation Co., 363
U.S. 574, 582–83, 80 S. Ct. 1347, 1353 (1960)). To determine if a claim falls within
the scope of an arbitration agreement, we focus on the facts alleged, not the causes
of action asserted. Hou-Scape, 945 S.W.2d at 205.
Discussion
          Because we believe the 2001 version of the DRP to control in this case, we
decline to address O’Beirne’s contentions regarding his employment-offer letter, the
“Dispute Resolution Agreement” that he signed when he began working for
Halliburton, and which DRP was in effect when he began working for Halliburton. 
Instead we begin with the most recent version of Halliburton’s DRP relevant to this
case, the 2001 DRP, which Halliburton asserts it mailed to O’Beirne. 
Presumption of Receipt
          A presumption of receipt arises when a party presents evidence that a document
was placed in the United States mail with the proper address and sufficient postage. 
Southland Life Ins. Co. v. Greenwade, 159 S.W.2d 854, 857 (Tex. 1942); Texaco, Inc.
v. Phan, 137 S.W.3d 763, 767 (Tex. App.—Houston [1st Dist.] 2004, no pet.). “The
matters of proper addressing, stamping, and mailing may be proved by circumstantial
evidence, such as the customary mailing routine of the sender’s business.” Phan, 137
S.W.3d at 767 (citing Cooper v. Hall, 489 S.W.2d 409, 415 (Tex. Civ.
App.—Amarillo 1972, writ ref’d n.r.e.)). Testimony that the notice was not received
is enough to rebut this presumption, thus creating a fact issue to be resolved by the
trial court. Greenwade, 159 S.W.2d at 857–58; Phan, 137 S.W.3d at 767. The
presumption of receipt is overcome only when the evidence supporting the contrary
inference is conclusive, or so clear, positive, and disinterested that it would be
unreasonable not to consider it conclusive. Phan, 137 S.W.3d at 767–68.
          Here, Halliburton provided uncontroverted evidence that copies of the 2001
DRP materials were sent to O’Beirne in a properly addressed packet, with
Halliburton’s return address. In addition, Halliburton provided evidence that they
kept track of packets returned to Halliburton by the Post Office as undeliverable and
that O’Beirne’s packet was not returned. These uncontroverted facts are
circumstantial evidence that proper postage was affixed to O’Beirne’s packet,
supporting the presumption of receipt.
          O’Beirne presented no evidence to the trial court that he did not receive the
DRP materials mailed to him in 2001. His affidavit “disputes” that he received the
plan materials that Halliburton asserted it provided to him in 2000 when he was hired,
but it does not address the materials mailed in 2001.


 Rather, O’Beirne argues that
Halliburton did not establish the presumption of receipt because it did not provide
direct evidence of proper postage. Because this can be—and has been—proven by
circumstantial evidence, we hold that Halliburton established the presumption that
O’Beirne received the 2001 DRP materials.
Agreement to Arbitrate
          The 2001 DRP provided, “Employment or continued employment after the
Effective Date of this Plan constitutes consent by both the Employee and the
Company to be bound by this Plan, both during the employment and after termination
of employment.” The 2001 DRP defines the “effective date” as June 15, 1998, as
amended as of August 15, 1999. O’Beirne does not dispute that he was employed by
Halliburton after the effective date of the plan. Therefore, O’Beirne accepted the
agreement by performance, i.e., his employment.
          Accordingly, we hold that a valid agreement to arbitrate exists between
Halliburton and O’Beirne.
Scope of the Agreement
          We next consider whether O’Beirne’s claims fall within the scope of the
agreement to arbitrate. The 2001 DRP materials state, “All Disputes not otherwise
settled by the Parties shall be finally and conclusively resolved under this Plan and
the Rules.” “Dispute” is defined as: “all legal and equitable claims, demands, and
controversies, of whatever nature or kind, whether in contract, tort, under statute or
regulation, or some other law . . . including , but not limited to, any matters with
respect to . . . (2) the employment . . . of an Employee, including the terms,
conditions, or termination of such employment . . . [or] (3) employee benefits or
incidents of employment with the Company. . . .” O’Beirne has sued Halliburton for
bonuses and other monies he claims were due to him upon his retirement from
Halliburton. Because his claims deal with his employment, termination of
employment, and benefits of such employment, we hold that O’Beirne’s claims are
within the scope of the arbitration agreement.
 

Conclusion
          Because O’Beirne’s claims are within the scope of a valid arbitration
agreement, we hold that the trial court abused its discretion by denying Halliburton’s
motion to compel arbitration. See In re Tenet Healthcare, Ltd., 84 S.W.3d at 765 (“A
court has no discretion and must compel arbitration if the answer to both questions
is affirmative.”)
          We conditionally grant relator’s petition for writ of mandamus, and we direct
the trial court to vacate its February 9, 2009 order and grant relator’s motion to
compel arbitration. We are confident the trial court will promptly comply, and our
writ will issue only if it does not.
          We vacate the temporary stay granted in this case on March 10, 2009.
 
 

                                                             Jim Sharp
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Sharp and Taft.