Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion
filed September 14, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00473-CV

___________________

 

Zeno Digital Solutions, L.L.C.,
Appellant

 

V.

 

K Griff Investigations, Inc.,
Appellee



 



 

On
Appeal from the County Civil Court at Law No. 3

Harris County,
Texas



Trial Court Cause No. 902722

 



 

 

MEMORANDUM OPINION

Appellant
Zeno Digital Solutions, L.L.C. appeals from the trial court’s judgment awarding
lost profit damages to appellee K Griff Investigations, Inc.  In its first
issue, Zeno contends that the trial court erred in awarding $64,069.50 in lost
profits to K Griff because there is no evidence to support the award.  In its
second issue, Zeno argues that if this court does not render judgment that K
Griff take nothing on its lost profits claim, then it should remand the entire
case for a new trial.  We affirm in part and reverse and render in part.

FACTUAL AND PROCEDURAL BACKGROUND

K Griff is an investigation firm that provides various
services, including background checks for employers, surveillance in workers’
compensation and domestic cases, and civil process service for attorneys.  Zeno
sells document management solutions as well as hardware, scanners, printers,
and facsimile machines.  

Zeno sold K Griff several copiers and facsimile
machines.  On August 31, 2005, Zeno sold two Ricoh digital copiers to K Griff. 
The 1035 copier, which Zeno represented as refurbished, had two fax lines and
was to be used by K Griff’s civil process department; the 3025 copier, which Zeno
represented as new, had three fax lines and was to be used by the firm’s background
checks department.[1]

In May 2006, the Ricoh copiers began exhibiting mechanical
problems.  Between May 2006 and December 2007, the 3025 copier was
non-operational for a total of twenty days and the 1035 copier was
non-operational for a total of nine days.  K Griff hired outside vendors to
repair the machines.[2]

On August 31, 2007, K
Griff filed suit against Zeno alleging violations of the Deceptive Trade
Practices Act (“DTPA”), fraud, negligent misrepresentation, and breach of
contract.  Following a bench trial, the trial court rendered judgment in favor
of K Griff and awarded K Griff $64,069.50 for loss of use and profits, $9,800
for cost of repairs, and $8,900 in attorney’s fees.  Zeno requested, and the
trial court subsequently filed, findings of fact and conclusions of law.  This
appeal followed.

I.                  
STANDARD OF REVIEW

Findings of fact in a bench trial have the same force
and dignity as a jury verdict.  Haas v. Ashford Hollow Cmty. Improvement
Ass’n, 209 S.W.3d 875, 887 (Tex. App.—Houston [14th Dist.] 2006, no pet.). 
If an appellant is attacking the legal sufficiency of an adverse finding on an
issue on which it did not have the burden of proof, the appellant must
demonstrate on appeal that there is no evidence to support the adverse finding. 
See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

In a legal sufficiency review, we determine whether
the evidence at trial would enable a reasonable and fair-minded person to reach
the finding under review.  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  In conducting this review, we credit favorable evidence if
reasonable factfinders could and disregard contrary evidence unless reasonable
factfinders could not.  Id.  We must consider the evidence in the light
most favorable to the finding under review and indulge every reasonable inference
that would support it.  Id. at 822.  If there is no evidence to support
the finding, we must then examine the entire record to determine if the
contrary proposition is established as a matter of law.  Id.  We must,
and may only, sustain a legal sufficiency challenge when 1) the record
discloses a complete absence of evidence of a vital fact, 2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, 3) the evidence offered to prove a vital fact is
no more than a mere scintilla, or 4) the evidence establishes conclusively the
opposite of a vital fact.  See Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998).

II.              
ANALYSIS

In its first issue, Zeno
contends that the trial court erred by awarding $64,069.50 to K Griff for lost
profits because there is no evidence to support the award.[3]  Specifically,
Zeno complains that K Griff improperly based its lost profits claim on lost
revenue and failed to account for expenses in its calculations.  Further, Zeno argues
that even if K Griff’s lost revenue was, in fact, lost profit, K Griff did not
prove its loss by competent evidence with reasonable certainty.

A party who loses the opportunity to accrue earnings
from the use of its equipment may be entitled to recover loss of use damages in
the form of lost profits.  See Wiese v. Pro Am Servs., Inc., ___S.W.3d
___, No. 14-08-00989-CV, 2010 WL 2813313, at *5 (Tex. App.—Houston [14th Dist.]
July 20, 2010, no. pet. h.).  The rule concerning sufficient evidence of lost
profit damages is well settled:

Recovery for lost profit damages does not require that the
loss be susceptible of exact calculation.  However, the injured party must do
more than show that they suffered some lost profits.  The amount of the loss
must be shown by competent evidence with reasonable certainty.  What
constitutes reasonably certain evidence of lost profits is a fact intensive
determination.  As a minimum, opinions or estimates of lost profits must be
based on objective facts, figures, or data from which the amount of lost
profits can be ascertained.

ERI Consulting Eng’rs,
Inc. v. Swinnea, No. 07-1042, 2010 WL 1818395, at *7 (Tex. May 7, 2010)
(quotation marks omitted).   Further, a calculation of lost profits must be
based on net profits, not gross revenues.  Holt Atherton Indus., Inc. v.
Heine, 835 S.W.2d 83 n.1 (Tex. 1992).

At trial, K Griff presented a two-page document entitled
“Profit & Loss by Class” for 2006 and 2007 (“Plaintiff’s Exhibit 9”).  The
2006 statement reflects the following pertinent data:

                                    1
Apts/Hospital/Staffing[4]                3
Civil Process

Total Income             955,835.86                                        346,379.11

Total COGS[5]              347,881.09                                        270,923.98

Gross Profit               607,954.77                                        
75,455.13

The following handwritten
notations appear at the bottom of the 2006 statement:

# 1:     79,652.92 mo                        3982.65
day

# 3:     28,864.92 mo                        1443.25 day

The 2007 statement reflects
the following relevant data:

                                    1
Apts/Hospital/Staffing                 3 Civil Process

Total Income             1,016,672.47                                     357,661.35

Total COGS                 394,117.57                                     288,288.80

Gross Profit                 622,554.90                                     
69,372.55

The following handwritten notations
appear at the bottom of the 2007 statement:

# 1:     84,722.71 mo (240 work days per year)  4236.14
day

# 3:     29,805.12 mo (20 days per mo)                 1490.26
day

Kathy Griffin, K Griff’s owner, testified that the
handwritten notations at the bottom of each page represent “the gross revenue
per department per day” that was lost in Department Nos. 1 and 3 as a result of
copier-related downtime.  Kay Hejny, K Griff’s bookkeeper, testified that she
used the gross revenue figures reflected in Plaintiff’s Exhibit 9 to calculate
the income lost due to the mechanical problems related to the Ricoh copiers.[6]  It is thus clear
that K Griff’s calculation of daily gross revenue for each of the two
departments is based on the annual gross revenue figures (i.e., “Total
Income”) for each department reflected in Plaintiff’s Exhibit 9.[7]  The trial court
awarded K Griff lost profit damages in the amount of $64,069.50.[8]

Zeno argues that the evidence does not support the
trial court’s award of lost profit damages because K Griff failed to account
for expenses in its calculations.  We agree.  “Lost profits are damages for the
loss of net income to a business and, broadly speaking, reflect income from
lost business activity, less expenses that would have been attributable to that
activity.”  Bowen v. Robinson, 227 S.W.3d 86, 96 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied).  In other words, lost profits must be based on net
profits, not gross revenues.  Holt Atherton, 835 S.W.2d at 83 n.1; Weise,
2010 WL 2813313, at *5.

Here, Griffin and Hejny unequivocally testified that K
Griff’s damage calculations were based upon the daily gross revenue of
Department Nos. 1 and 3 reflected in the handwritten notations on Exhibit 9.  Although
Exhibit 9 includes the cost of goods sold attributable to Department Nos. 1 and
3, these expenses are not reflected in K Griff’s calculations.  Further,
Exhibit 9 also includes a column entitled “Administrative,” which ostensibly
lists firm-wide administrative costs; however, these expenses are not allocated
among the departments or otherwise reflected in K Griff’s damage calculations. 
By failing to include these expenses in its calculations, K Griff failed to prove
$64,069.50 in lost profits by competent evidence with reasonable certainty.  See
Wiese, 2010 WL 2813313, at *5 (concluding appellee was not entitled to recover
lost profits where there was no evidence that appellee deducted any amount for
normal business operating expenses from gross profit calculation); Texaco,
Inc. v. Phan, 137 S.W.3d 763, 773 (Tex. App.—Houston [1st Dist.] 2004, no
pet.) (holding evidence legally insufficient to prove lost profit damages where
owners failed to meet burden of proving net profits from which expenses had
been subtracted); see also C.A. Walker Constr. Co. v. J.P. Sw. Concrete,
Inc., No. 01-07-00904-CV, 2009 WL 884754, at *6 (Tex. App.—Houston [1st
Dist.] Apr. 2, 2009, no pet.) (mem. op.) (concluding evidence was factually
insufficient to support lost profits award because plaintiff’s evidence
addressed only expected profits but failed to show likely expenses incurred in
performing contract).

On appeal, K Griff argues that expenses were, in
fact, taken into account in calculating lost profits.  At trial, Hejny
testified that “whether the machines were working or not we still had to pay
for our database fees … [a]nd we had to pay for our people to be there
answering the phones even though they were unable to get the work out.”  In its
brief, K Griff explains that “[w]hat [Hejny] was saying is that by using
year-end numbers, all expenses were included in the bottom line, they were sunk
costs and not having the down time from the fax machines would have translated
in additional revenues that would have gone straight to the bottom line.”  However,
it is clear that K Griff did not use net income in its calculations.  See Wiese,
2010 WL 2813313, at *5 & n.4 (finding plaintiff company failed to provide
competent evidence of lost profit damages despite president’s testimony that
the company deducted business expenses from its revenue where alleged
deductions were not reflected in calculations).  Plaintiff’s Exhibit 9 shows
that K Griff’s net income was $175,508.68 in 2006 and $93,577.13 in 2007.  As
previously noted, K Griff used the annual gross revenue figures (“Total
Income”) for each department in its calculations.  See Unifund CCR Partners
v. Weaver, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) (rejecting
appellee’s claim in his brief that he had timely served responses to
plaintiff’s request for admissions because “we do not consider factual
assertions that appear solely in briefs and are not supported by the record”)
(quoting Marshall v. Hous. Auth. of San Antonio, 198 S.W.3d 782, 789
(Tex. 2006)).

In sum, legally sufficient evidence does not exist to
support the trial court’s award of lost profit damages under the minimum
requirements of Holt Atherton.  There is no evidence that K Griff
deducted any amount for expenses in calculating lost profits.  Because K Griff
failed to meet its burden of proving net profits, from which expenses had been
subtracted, we hold that the evidence is legally insufficient to prove lost
profit damages.  See Wiese, 2010 WL 2813313, at *5; Phan, 137
S.W.3d at 773.  We sustain Zeno’s first issue.[9]

III.           
CONCLUSION

We reverse the portion of the trial court’s judgment awarding
K Griff $64,069.50 in lost profit damages and render judgment that K Griff take
nothing on its claim for lost profits.  We affirm the remainder of the trial
court’s judgment. 

/s/        Leslie B. Yates

                                                                                    Justice

 

Panel consists of Justices
Yates, Seymore, and Brown.

 









[1] Zeno also sold a small
business solutions server and software to K Griff.  However, after K Griff was
unable to make the server work with its existing system, it returned the server
to Zeno for a refund.





[2] At the time it purchased
the machines, K Griff entered into a service contract with Zeno under which
Zeno provided maintenance services for the copiers.  In March 2006, K Griff
cancelled its service contract with Zeno.





[3] On appeal, Zeno does not
challenge the portion of the trial court’s judgment awarding cost of repairs
and attorney’s fees to K Griff.





[4] Department No. 1 is the
background checks department. 





[5] “COGS” is cost of goods
sold.





[6]
Plaintiff’s counsel:
All right.  And how did you arrive at the per diem numbers that are listed on
Exhibit No. 9?

Hejny:  Very simply.  I took an average.

Plaintiff’s counsel:
Okay.

Hejny:  Of the year.

Plaintiff’s counsel:
Average of what?

Hejny: Of the year.

Plaintiff’s counsel: Okay.  But an average of what
components?

Hejny: Well, for Department
1 the revenue is reported here on the very first line under sales and
services.  And so I simply took that number and divided it by 12 to come up
with a month and then by 20 to come up with a day that — the number of
days that those people typically work.

. . . . 

Defense counsel: It’s actually pretty nearly
impossible to calculate the lost profits, isn’t it?

Hejny: It’s difficult.

Defense counsel: And you
don’t have that done here, do you?

Hejny: No.  I calculated gross revenue.





[7] For Department No. 1 in
2006: $955,835.86 (annual gross revenue) ÷ 240 workdays per year = $3,982.65
per day.  For Department No. 3 in 2006: $346,379.11 (annual gross revenue) ÷
240 workdays per year = $1,443.25 day.

 For Department No. 1 in 2007: $1,016,672.47 (annual
gross revenue) ÷ 240 workdays per year = $4,236.14 per day.  For Department No.
3 in 2007: $357,661.35 (annual gross revenue) ÷ 240 workdays per year =
$1,490.26 per day.





[8] The trial court awarded K
Griff $59,739.75 for the downtime and loss of use and profits for fifteen days
for the 3025 machine, and it awarded $4,329.75 for three days of downtime and
loss of use and profits related to the 1035 machine. This award is based on the
2006 daily gross revenue figures for the two departments reflected in the
handwritten notations in Exhibit 9: for Department No. 1, $3,982.65 (2006 daily
gross revenue) x 15 days = $59,739.75; for Department No. 3, $1,443.25 (2006
daily gross revenue) x 3 days = $4,329.75.





[9] Because of our
disposition of Zeno’s first issue, we need not address its second issue
regarding remand.