

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WINTON MORTGAGE COMPANY, L.L.C. AND WINTON and ASSOCIATES, INC., | § | No. 08-23-00184-CV |
| | § | Appeal from |
| Appellants, | § | County Court at Law No. 7 |
| v. | § | of El Paso County, Texas |
| MELISSA LIVINGSTON, | § | (TC# 2005-7022) |
| Appellee. | | |

**<u>MEMORANDUM OPINION</u>**

After over 17 years of litigation and longtime defense counsel's death, the trial court granted Appellee Melissa Livingston's motion for post-answer default judgment in this case arising from the termination of an employment contract in 2005. Appellants Winton Mortgage Company, L.L.C. and Winton and Associates, Inc. (collectively, the Winton entities) filed a "Motion for New Trial Pursuant to Rule 306a(4)," but the trial court improperly denied it. In this opinion, we first revisit Ms. Livingston's motion to strike the Winton entities' notices of appeal and our corresponding October 20, 2023 order on the motion in light of the record now before us. Determining that this appeal was properly brought as a regular appeal, we turn to the default judgment, which is not a final appealable judgment. Accordingly, we dismiss the appeal for want of jurisdiction.

# I. BACKGROUND

Ms. Livingston is a mortgage broker. In November 2004, she entered into a contract (the Agreement) with Winton Mortgage to originate mortgage business on its behalf. Under the Agreement, Winton Mortgage, which assists buyers of homes built by Winton & Associates with securing mortgage financing, agreed to pay Ms. Livingston a salary of $10,000 per month and periodic income distributions. As to the latter, Winton Mortgage would distribute 40% of its accumulated income to Ms. Livingston and the remaining 60% to Winton & Associates. Further, Winton Mortgage's overhead would be covered by Winton & Associates, but Winton & Associates would be reimbursed by Winton Mortgage for its total expenses.

With regard to termination, the Agreement provided, "[i]f for any reason this relationship does not appear to be working out properly and to the complete satisfaction of [Ms. Livingston] as well as [Winton Mortgage], each of them may at any time give the other a written notice that they wish to cancel the relationship and it will be cancelled 30 days thereafter." And the Agreement included a handwritten and initialed postscript, which reads: "P.S. It is agreed that mortgage business in the 'pipeline' will be allowed to be completed & earnings paid as is appropriate." The Agreement was signed by Ms. Livingston and Jack Winton (the owner of both Winton Mortgage and Winton & Associates) on behalf of Winton Mortgage.

In October 2005, Mr. Winton advised Ms. Livingston that he was no longer planning to operate a Texas mortgage company, and Winton Mortgage terminated the Agreement.[1] Ms. Livingston sued Winton Mortgage, Winton & Associates, and Mr. Winton (collectively, the Defendants). Among other things, Ms. Livingston alleged that Mr. Winton and an unnamed

---

[1] Mr. Winton alleged that he asked Ms. Livingston whether she wanted 30 days' notice of the termination as the Agreement provided, which she purportedly declined.

employee "were conspiring to take the mortgage business from her" and "engaged in a series of material breaches including nonpayment and consistently attempting to changes the terms of the Memorandum of Agreement." She asserted a fraud claim against the Defendants for "a series of fraudulent misrepresentations" she contends were made to induce her "to take over the management and operation of Winton Mortgage." She also asserted a breach of contract claim against the Winton entities. Ms. Livingston later amended her pleadings to drop the fraud claim and raise spoliation concerns.

The Defendants retained attorney Steven James, a solo practitioner, and counterclaimed for breach of contract, conversion, and fraud (the latter of which they later dropped). In September 2008, the Defendants filed a no-evidence motion for summary judgment. In May 2010, the trial court granted the motion as to Mr. Winton individually, but denied it as to the Winton entities. The Winton entities sought summary judgment again in part because Winton & Associates was not a party to the Agreement, but the trial court denied the motion.

Litigation continued slowly over many years as the parties waged various discovery disputes and Ms. Livingston brought on new counsel. The parties sought multiple continuances of trial dates, but otherwise appeared to be working towards trial by filing various pretrial motions and documents. However, the case largely stalled after April 2018 with no action from either side.

The Defendants' counsel, Attorney James, died in November 2021. In November 2022, Ms. Livingston filed a motion for post-answer default judgment against the Defendants. In the motion, Ms. Livingston alleged that she sought default judgment because no other attorney had entered an appearance on the Defendants' behalf, including after her attorney "made several attempts" to speak directly "to representatives" of the Defendants but did not receive a response.

3

She requested a total judgment of $937,221.20.[2] The certificate of service attested that the motion had been served on Attorney James electronically on November 29—even though the motion acknowledged that Attorney James had died over a year prior.

The trial court scheduled a final/default hearing for March 9, 2023. On January 27, 2023, Ms. Livingston's counsel sent a copy of the trial court's order setting the hearing to the following addressees via certified mail, each at the same mailing address:

- Jack Winton;

- three copies to Jack Winton, Winton & Associates Inc, and Winton Mortgage Company L.L.C., Attn: Andy J. Winton[3]; and

- Winton Mortgage Company L.L.C.

The certified mail return receipts reflected receipt on February 2, 2023.

On March 7, 2023, two days before the final hearing, Ms. Livingston filed a supplement to her default-judgment motion, in which she asked the court to dismiss the Defendants' counterclaims. On March 8, 2023, the day before the final hearing, she filed a second supplement, in which she included a business record affidavit and over 50 pages of records to support her damages calculations. The record reflects electronic service to Attorney James's email for the first supplement but not the second.

The next day, March 9, the trial court held the default judgment hearing, which the Defendants did not attend. Ms. Livingston, the only witness at the hearing, testified. The court granted default judgment in her favor, awarding her $294,255.26 in actual damages and $392,983.45 in prejudgment interest in an order signed on March 10, 2023. The order also

---

[2] This figure was based on Ms. Livingston's calculation of a 6% fee applied to closed files purportedly in the Winton Mortgage pipeline when the Agreement terminated, plus 40% commission, unpaid commission at her departure, and 5% compounded interest for 17 years. At the default judgment hearing, Ms. Livingston and her counsel acknowledged that the calculation was incorrect and adjusted her request to $687,238.71.

[3] Jack Winton and Andy J. Winton are apparently the same person.

dismissed the Defendants' counterclaims "pursuant to 165 Tex. R. Civ. P." The district clerk sent official notice of the judgment to Attorney James's address, but it was returned unclaimed. *See* Tex. R. Civ. P. 306a. On April 11, 2023—just after the trial court's plenary power expired—Ms. Livingston filed a certificate of last known addresses for the Winton entities, listing the mailing address to which she sent the default judgment hearing notice.

On May 3, 2023, the Winton entities filed a "Motion for New Trial Pursuant to Rule 306a(4),"[4] asserting they "did not receive the Notice required by Rule 306a from the Clerk" and "first received notice of the entry of a judgment . . . when a title company sent an Abstract of Judgment . . . on April 21, 2023." In support of the motion, Herschel Stringfield, the president of the Winton entities, attested:

> I have caused a thorough search of our offices to be performed and I can swear that no notice of the judgment of this Court dated March 10, 2023, was ever received by either Defendant. [] The first notice we received of the judgment was on April 21, 2023, when Great Western Abstract & Title Company sent a copy of the abstract to Brianna Concha in my office.

Ms. Livingston opposed the motion, arguing the signed certified mail receipts "conclusively establish[ed]" that the Winton entities had actual knowledge of the default judgment hearing but failed to appear. Further, she argued, their failure to seek substitute counsel after Attorney James's death demonstrated that they "were content to allow this matter to remain stagnate and without resolution." Ms. Livingston also contended the Winton entities "disingenuously" claimed lack of Rule 306a notice, and their "failure to diligently participate in this matter by obtaining or identifying new legal counsel" did not support their motion. Finally, Ms. Livingston urged that the motion was untimely.

---

[4] A motion to establish lack of notice of a judgment under Tex. R. Civ. P. 306a(4)–(5) and a motion for new trial under Tex. R. Civ. P. 320–329b are separate matters. We consider the merits of the instant motion only in relation to Rule 306a.

The trial court held an evidentiary hearing on the motion, at which the Winton entities presented testimony from Ms. Concha and Mr. Stringfield. Ms. Concha, the assistant controller of Winton & Associates, testified that on April 21, 2023, she was notified by a title company that there was an abstract of judgment against the company. On cross-examination, she noted that their receptionist is responsible for receiving mail at their business address and has the authority to sign certified mail return receipts on behalf of Mr. Winton, Winton Mortgage, and Winton & Associates. Ms. Concha reported that Mr. Winton has not been in the office "for a few years, since COVID, at least," so he would not have received the mail individually. Over defense counsel's objection that the question in this hearing regarded notice of the default judgment, not notice of the default hearing, the court admitted the March notices of the default hearing.

Mr. Stringfield also testified, confirming that he first learned of the judgment from Ms. Concha on April 21, 2023, and had no prior notice of the judgment or default-judgment hearing. He also testified that he did not know Attorney James had died and that the Defendants had not received notice that they would need new counsel in this case. Mr. Stringfield said he was not familiar with this case because Mr. Winton was "in charge" of it, and he confirmed that Mr. Winton had not been in the office since March 2020. When Ms. Concha brought Mr. Stringfield the abstract of judgment, he had it directed to their attorney.

The trial court denied the Winton entities' motion. They appealed. Upon receiving the notice of appeal, the clerk of this Court issued a letter to the parties indicating that the notice of appeal did not appear to be timely perfected and asked for a response showing grounds to continue the appeal. Both sides responded, asserting different notice-of-judgment dates, after which we abated the case for the trial court to hold an evidentiary hearing and make findings establishing the date the Winton entities received notice of the judgment.

6

Following a hearing—at which no evidence was introduced—the trial court made its findings, including a finding that "During the June 20, 2023 hearing on [the Winton entities'] motion for new trial, [the Winton entities] failed to establish that the March 13, 2023 Rule 306a OFFICIAL NOTICE failed to provide actual knowledge or notice to [the Winton entities] and James on that date." The court further found that the Winton entities "failed to provide an explanation regarding the state of its legal counsel between the time Attorney James passed and the time Attorney Robert Skipworth entered an appearance on its behalf on May 3, 2023." The court concluded that its "plenary power commenced on March 10, 2023 and expired on April 9, 2023," and that a "Rule 306a(5) order is not appropriate under the circumstances of this case."

In response to the trial court's findings on abatement, the Winton entities filed an amended notice of restricted appeal, while preserving error on their claim that their regular appeal was timely filed.[5] Thereafter, Ms. Livingston filed "Appellee's Motion to Strike Appellants' Notice of Appeal Filed on July 17, 2023 and Amended Notice of Restricted Appeal Filed on September 26, 2023." In an October 20, 2023 order, we denied Ms. Livingston's motion to strike, concluding the Winton entities' amended notice of restricted appeal was timely filed and thus we had jurisdiction over that type of appeal.

## II. DISCUSSION

We begin and end our discussion in this case by considering two jurisdictional issues. First, we revisit Ms. Livingston's motion to strike and our resulting October 20, 2023 order on the issue of whether a timely notice of appeal was filed. Second, we turn to the trial court's default judgment to determine whether it constituted a final, appealable judgment; this determination resolves the

---

[5] Ms. Livingston challenges our jurisdiction to hear this appeal because the amended notice of appeal is not in the clerk's record. However, an amended notice of appeal may be filed directly in the court of appeals any time before the appellant's brief is filed, so Ms. Livingston's argument in inapposite. Tex. R. App. P. 25.1(g).

appeal. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023) (recognizing that a "court may not reach the merits if it finds a single valid basis to defeat jurisdiction").

### A. The motion to strike and our October 20, 2023 order

We first revisit Ms. Livingston's motion to strike, which argued that we have no jurisdiction because both notices of appeal were untimely. While we ruled that the motion should be denied in our October 20, 2023 order, that ruling was made without the benefit of a complete record. With the full record now before us, we again conclude that the motion to strike should be denied, but additionally conclude that the Winton entities' appeal was properly and timely brought as a regular appeal. Accordingly, we hereby withdraw our October 20, 2023 order.

In our October 20, 2023 order, we had concluded that the Winton entities timely filed a restricted notice of appeal in the wake of the trial court's findings on abatement, which foreclosed reliance on the original notice of regular appeal. At the hearing held by the trial court after we abated the case, the Winton entities tried to establish April 21, 2023, as the date they first received notice of the default judgment, but the trial court rejected their argument, finding that "[d]uring the June 20, 2023 hearing on [the Winton entities'] motion for new trial, [the Winton entities] failed to establish that the March 13, 2023 Rule 306a OFFICIAL NOTICE failed to provide actual knowledge or notice to [the Winton entities] and James on that date."

We now conclude that, based on the complete record, this finding by the trial court was erroneous. That is, the Winton entities did, at the earlier June 20, 2023 hearing, establish that the date they received notice of the default judgment was April, 21, 2023, not March 13, 2023, making their motion for new trial and original notice of regular appeal timely.[6]

---

[6] More specifically, because the Winton entities' "Motion for New Trial Pursuant to Rule 306a(4)" was filed within 30 days after the notice-of-judgment date of April 21, 2003, it extended the deadline to file an appeal to July 20, 2023, i.e., 90 days after April 21, 2023, thus the original notice of regular appeal filed on July 17, 2023 was timely. *See* Tex.

As explained by the Texas Supreme Court, Rule 306a extends the deadline for post-judgment filings if certain requirements are met:

> Post-judgment procedural timetables—including the period of the trial court's plenary power—run from the day a party receives notice of judgment, rather than the day judgment is signed, if the party: (1) complies with the sworn motion, notice and hearing requirements mandated by Rule 306a(5), and (2) proves it received notice of the judgment more than [20] (but less than [91]) days after it was signed.

*In re Lynd Co.*, 195 S.W.3d 682, 685 (Tex. 2006) (citing Tex. R. Civ. P. 306a).

A party claiming late notice under Rule 306a must "prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either *received a notice of the judgment or acquired actual knowledge of the signing* and that this date was more than twenty days after the judgment was signed." Tex. R. Civ. P. 306a(5) (emphasis added). The sworn motion "establishes a prima facie case that the party lacked timely notice and invokes a trial court's otherwise-expired jurisdiction for the limited purpose of holding an evidentiary hearing to determine the date on which the party or its counsel first received notice or acquired knowledge of the judgment." *In re Lynd*, 195 S.W.3d at 685. To that end, the motion must be filed before the trial court's plenary power—as measured from the date the party receives notice of judgment, as established by the party's motion—expires. *Id.*

We review a trial court's findings under Rule 306a under the traditional legal and factual sufficiency standards of review. *Black v. Curtis*, No. 07-23-00261-CV, 2024 WL 504008, at *1 (Tex. App.—Amarillo Feb. 6, 2024) (per curiam) (order), appeal decided, 2024 WL 3334011 (July

---

R. App. P. 4.2(a)(1), (b); 26.1(a)(1); Tex. R. Civ. P. 306a(4)–(5). And while the motion may have focused mainly on Rule 306a issues, which, as noted above, are separate from new trial issues, the motion did "pray that the [trial c]ourt grant a new trial so that [the Winton entities'] meritorious defenses can be tried." The motion thus sufficed to extend the deadline to appeal. *See PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 717 (Tex. App.—Dallas 2011, pet. denied) ("Nothing in Rule 26.1(a)(1) compels the conclusion that only meritorious or potentially meritorious motions for new trial trigger the extension of the appeal deadline. On the face of the rule, any timely filed motion for new trial suffices . . . .").

8, 2024, no pet. h.) (mem. op.) (citing *Texaco, Inc. v. Phan*, 137 S.W.3d 763, 766–67 (Tex. App.—Houston [1st Dist.] 2004, no pet.)). In reviewing legal sufficiency, we must first examine the record for evidence in support of the finding, while ignoring contrary evidence. *Id.* (citing *Hot Shot Messenger Serv., Inc. v. State*, 798 S.W.2d 413, 415 (Tex. App.—Austin 1990, writ denied)). If no evidence supports the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* (citing *Hot Shot*, 798 S.W.2d at 415)).

In his affidavit, Mr. Stringfield attested that following "a thorough search of [the Winton entities'] offices" he could "swear that no notice of the judgment . . . dated March 10, 2023, was ever received," such that "[t]he first notice [the Winton entities ] received of the judgment was on April 21, 2023, when Great Western Abstract & Title Company sent a copy of the abstract to Brianna Concha in [his] office." Mr. Stringfield's affidavit was filed with the Winton entities' Rule 306a motion.

Based on their sworn motion, the Winton entities met their burden to establish a prima facie case that they first received notice of the default judgment on April 21, 2023. *See In re Lynd*, 195 S.W.3d at 685. Ms. Livingston was then entitled to present her own evidence supporting her position that the Winton entities received timely notice from the clerk or otherwise obtained actual knowledge of the default judgment order within 20 days after it was signed. *See Hanash v. Walter Antiques, Inc.*, 551 S.W.3d 920, 927 (Tex. App.—El Paso 2018, pet. denied).

Ms. Livingston could have raised a fact question on the issue by presenting either affidavits or testimony. *Id.* But she did not. Instead, Ms. Livingston presented evidence challenging the Winton entities' purported lack of notice of the default-judgment hearing—not their lack of notice of the judgment itself. Specifically, Ms. Livingston attached the notices of the default judgment hearing and certified mail receipts described above. And although Ms. Livingston attached to her

10

motion the clerk's 306a notice of the default judgment sent to Attorney James at his business address, she also included the returned copy, bolstering the Winton entities' position that the clerk's notice was never delivered. *Triple Crown Moving & Storage, LLC v. Ackerman*, 632 S.W.3d 626, 634 (Tex. App.—El Paso 2020, no pet.) ("[T]he presumption arising from a document being placed in the mail pursuant to Rule 21a is negated when the document is returned as 'unclaimed.'"). Ms. Livingston did not call any witnesses to testify at the hearing on June 20, 2023. At the hearing, only Mr. Stringfield and Ms. Concha testified to the same facts detailed above regarding the April 21, 2023 notice date. Ms. Livingston presented argument—but no evidence—challenging this notice date.[7]

In sum, the Winton entities made a prima facie case that they first received notice of the trial court's judgment on April 21, 2023, and further presented evidence at the hearing to support their position, while Ms. Livingston not only failed to rebut this evidence, but provided additional evidence in support of the Winton entities' position. Accordingly, we conclude that the trial court's Rule 306a order denying the Winton entities' motion was not supported by legally sufficient evidence and that the evidence presented conclusively established that the Winton entities first received notice of the default judgment order on April 21, 2023. Because this date was more than 20 and less than 91 days after the March 10, 2023 default judgment order, and because the Winton entities timely filed their Rule 306a motion for new trial on May 3, 2023, within 30 days after first receiving notice of the judgment, Rule 306a extended both the trial court's plenary power to consider the motion and the appellate timetable. *See id.* at 686–87. Consequently, the Winton

---

[7] Ms. Livingston's counsel contended the Defendants "did not identify when they obtained actual knowledge of the judgment." He continued that the Winton entities "actually knew a default hearing was going to occur," but "consciously or willfully didn't appear," which "imputes actual knowledge that a judgment is going to be entered against them because they didn't appear, and they have knowledge of the hearing."

entities' original notice of regular appeal was timely filed.[8]

**B. The default judgment**

We next consider our jurisdiction, even though the parties have not raised this issue, by examining whether the default judgment entered by the trial court was a final judgment. *See Freedom Commn'cs, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012) ("[W]e must consider our jurisdiction, even if that consideration is sua sponte."). *Matter of Estate of Fenenbock*, No. 08-23-00146-CV, 2024 WL 1340564, at *1 (Tex. App.—El Paso Mar. 28, 2024, no pet.) (mem. op.) ("Without jurisdiction, we have no power to address the merits of an appeal; accordingly, we must determine whether we have jurisdiction of an appeal even when the parties do not raise the issue."); Whether we have jurisdiction is a legal question, which we review de novo. *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020).

In general, a party can appeal only a final judgment, with certain exceptions not applicable here. *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 730 (Tex. 2019); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). While a judgment following a trial on the merits is presumed to be final, "there is no such presumption of finality following a . . . default judgment." *In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 (Tex. 2005). "[A] judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties." *Lehmann*, 39 S.W.3d at 192–93.

"If the judgment clearly and unequivocally states that it finally disposes of all claims and

---

[8] Because of the course of events described above, this appeal was briefed as a restricted appeal rather than a regular appeal. However, the ultimate outcome of the appeal is the same, given our analysis below.

parties, the assessment is resolved in favor of finding finality, and the reviewing court cannot review the record." *Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 154 (Tex. 2023). Thus, we begin by determining whether the challenged order is clearly and unequivocally final on its face. *Id.* While "no magic language is required" to satisfy the clear-and-unequivocal standard, merely stating that the order is "final" or "appealable," including a Mother Hubbard clause,[9] or awarding costs is not sufficient. *Id.* Instead, "a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (citing *In re R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019)).

Though the default judgment order is titled "Final Judgment for Plaintiff and Dismissal of Counterclaims Pursuant to 165 Tex. R. Civ. P." and includes a Mother Hubbard clause, it does not contain "a clear and unequivocal statement of finality" sufficient to render the judgment final, as it does not state that it disposes of all claims and parties or is appealable. *Id.* While it does state that it disposes of "all counterclaims asserted by all Defendants," it does not state that it disposes of all claims filed by Ms. Livingston. Further, it does not state whether it disposes of any claims against Jack Winton, a named defendant in the style of the judgment. *Id.* at 802 (citing *In re R.R.K.*, 590 S.W.3d at 541).

We therefore turn to the record to determine whether the judgment "actually disposes of every pending claim and party." *Id.* at 801–02; *see also Lehmann*, 39 S.W.3d at 205–06 ("To determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court to look to the record in the case . . . . [I]f the record reveals the

---

[9] A Mother Hubbard clause is "a recitation that all relief not expressly granted is denied." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001).

existence of parties or claims not mentioned in the order, the order is not final.")

Here, the record reveals the existence of a request by Ms. Livingston for exemplary damages, which is not mentioned in the "Final Judgment." A request for exemplary damages is considered a claim for purposes of determining whether a judgment is final. *See Burlington*, 167 S.W.3d at 830 ("The default judgment in this case failed to dispose of all claims; it awarded damages "[o]n the claim of negligence" but failed to dispose of Garcia's claim for exemplary damages based on gross negligence.") (citing *Houston Health Clubs, Inc. v. First Court of Appeals*, 722 S.W.2d 692, 693 (Tex. 1986) (per curiam) (holding that a default judgment that "did not dispose of the punitive damage issue" was not final)).

The "Final Judgment" does not state whether the damages awarded related to Ms. Livingston's contract claim or her exemplary damages claim, or both, but the judgment does identify the damages awarded as "actual damages." Actual damages are awardable for a contract claim. *See Miresco Inv. Services, Inc. v. Yatoo Enterprises (USA), Inc*., No. 01-11-01006-CV, 2012 WL 6644996, at *3 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet.) (mem. op.) ("[A]ctual damages are recoverable for breach of contract.") (citing *Mead v. Johnson Group, Inc*., 615 S.W.2d 685, 687 (Tex. 1981)). However, exemplary damages are distinct and apart from actual damages. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 230 (Tex. 2019) ("Exemplary, or punitive, damages are not compensatory and are designed to punish the defendant for outrageous or morally culpable conduct and to deter the defendant and others from engaging in the same behavior in the future."); *cf. Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013) ("Actual or compensatory damages are intended to compensate a plaintiff for the injury she incurred."). And a "breach of contract cannot support recovery of exemplary damages." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011)

14

(quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).[10] Therefore, the exemplary damages claim was not disposed of in the order before us.[11]

Because the order before us does not dispose of all pending claims, we conclude that it is not a final, appealable order. *Lehmann*, 39 S.W.3d at 205–06 (recognizing that when an appellate court must look to the record, "if the record reveals the existence of parties or claims not mentioned in the order, the order is not final").

## III. CONCLUSION

For the above reasons, we dismiss the appeal for want of jurisdiction. The case remains pending within the trial court's plenary power.

`                                                                LISA J. SOTO, Justice

August 23, 2024

Before Rodriguez, C.J., (Senior Judge), Barajas, C.J. (Ret.) and Soto, J.
Rodriguez, C.J. (Senior Judge) (Sitting by Assignment)
Barajas, C.J. (Ret.) (Sitting by Assignment)

---

[10] We thus distinguish this case from *In re Roman* because here, the trial court did not "expressly dispose[] of [any] claim on which the request for exemplary damages is based." 554 S.W.3d 73, 77 (Tex. App.—El Paso 2018, no pet.).

[11] As to Ms. Livingston's claims against Mr. Winton individually, the record reveals that these claims, in contrast, were in fact disposed of by summary judgment in 2010.